Robertson v. Mosson.

## J. W. ROBERTSON v. ELIAS MOSSON AND OTHERS.

A patentee of land, who sells the same by general warranty deeds containing the same descriptive calls as those given in the patent, is not thereby rendered incompetent, by reason of interest, to testify as a witness with regard to the boundaries of the land, in behalf of parties claiming it under the titles so made by him,—the controversy being not about the titles of the respective parties litigant, but about the true boundaries of the tract patented to and sold by the witness.

In the construction of grants, or in determining the effect to be given to the various calls therein, the grant must receive, if possible, the construction which is consistent with the intention of the grantor.

Where the actual survey can be found and identified as the same called for in the grant, the general rule is that the most material and certain calls will control those which are less certain and material; and hence it is said that a natural object, such as a river, a known stream or spring, or even a marked tree, will control course and distance.

Where a surveyor after having run one line and established a corner at a natural object, returned to the beginning and proceeded to run the opposite lines, and having established another corner, called thence by course and distance for the natural object so established by him as a corner, but a line run upon the course and distance so prescribed would materially deflect from the natural object called for; held, that the natural object was the controlling call and must prevail over the course and distance.

In this case, preference was adjudged to a well identified natural object over course and distance, although the survey was thereby made to include a considerably greater area than the certificate was entitled to; while within the lines run upon the course and distance there would still have been a small excess of area.

Robertson v. Mosson.

APPEAL from Travis.    Tried below before Charles L. Robards, Esq., Special Judge.

This suit was originally in the form of an action of trespass to try title and for damages, instituted by the appellees, Elias Mosson, Herman Mosson, and Hart Samuels, against Joseph Warren, on the 6th day of May, 1858.

On June 11th, 1858, the appellant Robertson intervened, claiming a portion of the land sued for by the plaintiffs.    By agreement the case as between the plaintiffs and the defendant, Warren, was tried at the first term of the court, a jury waived, and the plaintiffs had judgment as against Warren.

The litigation proceeded as between the plaintiffs and Robertson, the intervenor, who by agreement admitted the validity of their respective titles, and narrowed the controversy to the question of the true upper boundary of the plaintiffs' tract.    The title of the plaintiffs was much older than that of the intervenor, and must prevail for the land in controversy if the boundary was established as contended for by them.

The survey on which was issued the patent under which, by subsequent conveyances, the plaintiffs claimed, was made in 1838, by Thomas H. Mays as a surveyor, and was located by him as assignee of a certificate granted to Daniel J. Gilbert for one third of a league of land.    In 1846, Mays sold an undivided half interest in the land to Peter McGreal, and in 1852 the other undivided half interest to Francis Kelly, and in both instances executed to his vendees deeds with general warranty of title.    Mays was introduced as a witness by the plaintiffs, two of whom, Herman Mosson and Hart Samuels, in order to obviate the objection of interest, tendered him a release as to themselves and a bond for his indemnification as against liability to the other plaintiff, Elias Mosson.

In the diagram delineated in the opinion, the portion of the Gilbert survey in controversy is that which is comprised within the lines E C, C D, and D E.    The plaintiffs claimed the whole area included in the outside line C D E, while the intervenor contended for the line C F E, or at least for the line C F D.    The grounds for these conflicting claims, and the evidence relating to

them, are sufficiently set forth in the opinion. By the report of
a surveyor appointed by the court, it appeared that the boundaries
of the Gilbert survey, as claimed by the plaintiffs, comprised four
hundred and twenty-one acres more than the third of a league
called for by the certificate; while within the boundaries as con-
tended for by the intervenor, there was an excess of sixty-four acres
more than the third of a league.

The cause came to trial on the 1st of February, 1859, when,
the presiding judge, Hon. A. W. Terrell, having excused himself
for cause, the special judge was agreed upon, and a jury being
waived, there was judgment by the court for the plaintiffs.

*John A. & R. Green*, for appellants. The object of the des-
cription of the lines and corners of a survey in a patent, is to
describe the survey *actually run*. Wherever, therefore, the lines
actually run by the surveyor, at the time of the original survey,
vary from the calls of the patent, such variance will be regarded
by the courts as a mistake or a misdescription merely in the patent;
and this doctrine, which seems universal, has been carried so far
in North Carolina, that a grant has been held to carry the land
actually surveyed, although wholly outside of the calls of the
grant. (Bradford v. Hill, 1 Haywood's R., 22, and cases cited
in note to the same; Newsom v. Prior, 7 Wheat. R., 10; Her-
bert v. Wise, 3 Call. Va. R., 239; Helm v. Small, Hardin R.,
369; Marsingill v. Boyles, 4 Humph. R., 207.)

As a natural sequence, the points C and D being established,
the true line between them is not a perfectly straight line over,
but the line actually run by the surveyor, however crooked or
zig-zag. (Thornsberry v. Churchill, 4 Munroe R., 29; Baxter
v. Evett, 7 Munroe R., 334.)

And if the line is actually run and marked only a part of the
way, the true line is found by following such line as far as marked
or blazed, and then run a direct line to the next known corner.
(Cases above cited; Cowan v. Fauntleroy, 2 Bibb R., 261.)

*Hancock & West*, for appellees, cited De Leon v. White, 9
Tex. R., 598; Anderson v Stamps, 19 Tex. R., 460; Urquhart
v. Burleson, 6 Tex. R., 502; Hubert v. Bartlett, 9 Tex. R., 97.

BELL, J.   One of the errors assigned is, that the court permitted Thomas H. Mays to testify as a witness in the case.   This point seems to be abandoned by the counsel for the appellant, inasmuch as no reference is made to it in the brief.   If the witness Mays had been incompetent because of interest, we think it very questionable whether his competency could have been restored by the execution of the bond by two of the plaintiffs below to indemnify him.   We have seen no authority that would warrant such a course of proceeding.   We are of opinion, however, that the witness was not incompetent.   It is true, he was a remote warrantor of the title to the Gilbert survey.   He sold to McGreal and to Kelly undivided portions of the Gilbert survey, describing the same as it is described in the patent from the government, and bound himself to warrant the title.   But the title was not called in question in this suit; the controversy was about the true boundary.   The question to be determined was, what is the legal meaning of the language of the patent, when considered in the light shed upon it by the acts constituting the survey.   Mays was not bound by his warranty to make good to his vendees the title to any more land than was conveyed to him by the patent from the government.   Upon the question of boundary involved in the present suit, he was a competent witness.

What then is the true boundary?

The rules which govern courts in the construction of grants, or in determining the effect to be given to the various calls in a grant, have been frequently laid down by this, and other courts. It has been uniformly held that the grant must receive, if possible, the construction which is consistent with the intention of the

grantor. It is always said that the general rule is, that the most material and certain calls will control those which are less certain and material; " hence," it is said, " a call for a natural object, as a river, a known stream, a spring, or even a marked tree, will control course and distance." (9 Tex. Rep., 103; 19 Tex. Rep., 460.) "The lines of the survey as actually marked upon the ground, if they can be found and traced, will control course and distance. But this is where the actual survey can be found and identified as the same called for in the grant. It is not meant that where the grant calls for certain known and established natural or artificial monuments and boundaries, these may be controlled by parol proof of a survey entirely inconsistent, and repugnant to all the calls of the grant." (Anderson v. Stamps, 19 Tex. R., 460.)

In this case it is conclusively shown that the surveyor commenced at the point A, as shown by the diagram, and meandered the river to the point D, which was a large spring with a cypress tree growing in it. This cypress tree the surveyor marked as the upper corner of a survey to be subsequently made. The surveyor then returned to the point A, and ran the line north 30 degrees east, to the point B. He also ran the line from the point B to the point C. The surveyor testifies that he ran no line from C to the river, but that he called for the point D as the third corner of the survey. He called for the spring at D upon the course south 30 degrees west from C, whereas the spring at D is shown to be upon a course south 36 degrees west from the point C. Two of the witnesses, who were of the surveying party, testify that a line was actually run and marked a part of the way from the point C towards the river, on the course south 30 degrees west. Some of the witnesses also testify that there is a marked line from C to the river at the point E. In this state of the case, the appellant claims that the survey should begin at A and proceed to B, from B to C, and from C to E, on the river, and thence to the place of beginning; or at the most, that the survey should proceed, after reaching the point C, from C to F, which is assumed to be about the point to which the third line of the survey was actually run and marked, and from F to the spring, at D. It is obvious that

the point D is the point which the surveyor intended for the third corner of the survey. It is the most material, and therefore the controlling call in the grant, and to that point the survey must be carried. It may be true that the surveyor ran an experimental line from C to E, expecting to find at E the spring and cypress tree. If he had done so, and had even marked the line, he might well, after finding that it did not reach the spring, call for the spring and the cypress tree which he had already marked, knowing that the call for the natural objects would control any error in the course and distance. But there was a conflict of evidence. The surveyor said that no line was run from C towards the river. The verdict of the jury cannot therefore be set aside. The judgment of the court below is in accordance with the proper construction of the grant, and must be affirmed.

It is ordered accordingly.

Judgment affirmed.