### H. R. GREGG V. J. H. HILL.

#### No. 6978.

1. **Boundary Lines.**—The north line of a survey being established and identified, and it being evident that other calls were made by mistake, the survey should be established by course and distance from such established lines. See example.

2. **Warranty of Number of Acres.**—A contract for sale designated the number of acres in the tract and the aggregate of price was made at $4.50 an acre. In a suit for purchase money a deficiency in the acreage would entitle the vendee to a corresponding abatement in the price, whether such deficit arose from conflicting superior titles or deficiency within the survey sold.

APPEAL from Tom Green. Tried below before Hon. J. C. RANDOLPH.

The facts are fully stated in the opinion.

The following sketch map will aid in understanding the opinion:

*W. D. Cochran,* for appellant.—1. Where no actual survey has been made on the ground, the calls for course and distance when supported by the configuration of adjacent surveys will control calls for unmarked prairie lines. Boon v. Hunter, 62 Texas, 582; Duff v. Moore, 68 Texas, 272; Gerald v. Freeman, 68 Texas, 201; Freeman v. Mahoney, 57 Texas, 621.

2. A vendee of land can not be an innocent purchaser in good faith when the recitals in his chain of title, the records of the county in which the land is situated, or any facts brought to his knowledge, put him upon notice of a former sale, or of such information as by ordinary and prudent inquiry would lead to notice of the former sale. Willis v. Gay, 48 Texas, 463, Allen v. Root, 39 Texas, 590; Mayfield v. Averitt, 11 Texas, 140; Ponton v. Ballard, 24 Texas, 619.

No brief for appellee reached the Reporter.

TARLTON, JUDGE, *Section B.*—The following statement of the nature of this suit is substantially correct: November 16, 1887, appellant filed his petition in the District Court of Tom Green County, against appellee J. H. Hill. Appellant declared upon a promissory note made and delivered to him by appellee June 17, 1886, for the sum of $1200, due thirty days after date, with interest at the rate of 12 per cent per annum from maturity until paid, and providing for the payment of 10 per cent attorney fees in case legal proceedings were instituted thereon. The appellant prayed judgment for the amount of this note, principal, interest, and attorney fees.

November 17, 1887, appellee filed his answer, alleging substantially that appellant had, on May 16, 1886, entered into a written agreement with appellee to purchase the north $2420\frac{49}{100}$ acres of land of the Lovic P. Moore survey, in Tom Green County; that appellant had paid appellee the sum of $4151.52 of the purchase money in cash, and agreed to pay the balance ($6848.68) as soon as certain outstanding vendor's lien notes could be paid off, and as soon as appellee should obtain releases from the parties holding them, and should make a deed conveying the land to appellant. Appellee alleged that he had procured the releases and tendered the deed, and that appellant refused to pay the balance of the purchase money, for which appellee prayed judgment, with a decree foreclosing his vendor's lien.

April 23, 1888, appellant replied to appellee's answer by supplemental petition, admitting the execution of the contract, but alleging that at the time of making the contract he was a stranger in the community and unacquainted with the location of the land; that the appellee, who was well acquainted with it, showed appellant the land, and fraudulently misled, deceived, and overreached him as to the shape and quantity of the land he owned in the Moore survey; that appellee

represented to appellant that he owned the north $2420\frac{40}{100}$ acres of the survey, when in fact he only owned 2121 acres of it; that the land was not in the shape in which it was represented to be, and was not so valuable as it would have been had the representations been true; that it did not include lands pointed out by appellee to appellant, more valuable than the land which appellant obtained—all material inducements to the contract. Appellant also alleged that he had paid off all the vendor's lien notes outstanding against the land, amounting to $3233.70, and had paid for appellee at his request the sum of $275 to various parties. Appellant prayed for an abatement in the price for the failure in quantity, quality, and shape of the land; for a credit upon the purchase price of the several amounts paid and of the amount of the note sued on; for a specific performance of the contract; and for a judgment against appellee for the amount shown to be due appellant from the several transactions over the price agreed to be paid for the land.

Appellee having denied generally the allegations of the supplemental petition, the court, on November 20, 1888, rendered judgment for appellee for $1494.86, with a foreclosure of the vendor's lien, from which the appellant prosecutes this appeal.

No question is made in regard to the amount due on the note executed by appellee to appellant, which was the sum of $1689.60 at the date of the judgment below, nor in regard to the amount of appellee's indebtedness paid by appellant, $3233.70 for outstanding vendor's lien notes, and $275 for other indebtedness. The evidence with reference to the sale by appellee to appellant is that the land was to be paid for at the rate of $4.50 per acre. It seems to be conceded that if there be a deficiency in the quantity of the land, appellant is entitled to a credit pro tanto on the price to be paid appellee. The issue then is, whether there is such deficiency, and if so, the extent thereof. The record excludes any other issue. The court, in its tenth conclusion of fact, found that appellee did not own the number of acres in the Moore survey which he agreed to convey to appellant, but that by reason of the conflict with older surveys there were 152½ acres less than the number sold to appellant, worth $4.50 per acre, and aggregating $686.25. The court, therefore, credited appellant with $686.25, the value of the shortage in the land. Appellant, in the only assignment of error which it is necessary for us to consider, complains that the court erred in this conclusion "in holding that there was a deficiency in the quantity of land sold by defendant to plaintiff of only 152½ acres, and in not allowing in abatement of the purchase money for the 58 acres of the Moore survey lying between the north line of C. D. Foote's fence and a line running west from the northwest corner of the Southern Pacific Railway Company survey No. 75, and for the $102\frac{8}{10}$ acres of land claimed by Broome and shown by the evidence to be vacant land and not within the boundaries of the Lovic P. Moore survey." In other words, appel-

lant contends that there is a deficiency of $313\frac{3}{10}$ acres, instead of $152\frac{1}{2}$ acres as found by the court.

Appellee purchased the land in question from one Sanderson by deed, in which it is described as "the north $2420\frac{49}{100}$ acres of a survey of land in the name of Lovic P. Moore, * * * being all that portion of the aforesaid survey not heretofore conveyed to C. D. Foote." The land previously conveyed to Foote was that part of the L. P. Moore survey lying "south of a line drawn west from the northwest corner of survey No. 75, Southern Pacific Railway Company survey." This line is therefore the south boundary of the tract sold by appellee to appellant. No actual survey upon the ground was made of the Lovic P. Moore survey. Its northwest corner, however, as shown by the testimony of the surveyor Taylor, is fixed by its calls for certain river surveys, the corners of which are established on the ground. From this northwest corner its north line is established by the call in its field notes 3520 varas east. Its next call is *south* 3254 varas to the southwest corner of the Southern Pacific Railway survey No. 95. Its calls are thence west and south with the lines of the Southern Pacific Railway Company surveys 96 and 75 until the northwest corner of No. 75 is reached. From this point stakes only are called for. The call for the southwest corner of the Southern Pacific Railway survey No. 95 begets the confusion encountered in fixing the location of the Moore survey. The location of the survey No. 95 is fixed, though none of its original corners or bearings are upon the ground, nor are there any natural or artificial objects by which they can be identified. The testimony shows that in running from the northeast corner of the Moore survey to the southwest corner of survey No. 95, a surveyor would be compelled to pursue a wholly different course and traverse a much shorter distance than called for in the field notes of the Moore survey. It further appears from the testimony of the witness Foote, that if the Moore survey be located according to its calls for the southwest corner of survey No. 95, thence running west and south with the north and west lines of surveys 96 and 75, it would close at a point so far north of its beginning as to exclude from it about 1000 acres from its lower end, and it would not conform to the configuration of the river surveys. It is proper, therefore to ignore the call for the southwest corner of the survey No. 95. This survey was evidently called for through mistake. The north line of the Moore survey being established and identified, the remaining lines should be established by course and distance, though this may involve a disregard for another survey called for through mistake. Boon v. Hunter, 62 Texas, 582; Duff v. Moore, 68 Texas, 270; Gerald v. Freeman, 68 201; Freeman v. Mahoney, 57 Texas, 626. The surveyor Taylor applied this rule in ascertaining the quantity of land actually embraced in the contract of sale by appellee to appellant; the court evidently

also accepted it as correct, otherwise it could not have found the deficiency of 152½ acres. An inspection of the record of the evidence of Taylor and the map prepared by him indicates that this deficiency depends upon the fixing of the east line of the Lovic P. Moore survey as by Taylor, ignoring the call for the southwest corner of survey No. 95.

The question of fact then arises, Did the appellant get from the appellee the land, $2420\frac{49}{100}$ acres, which the latter undertook to convey to him?

Appellant testified, without contradiction, that appellee, in proposing to sell the land to him, told him that he owned $2420\frac{49}{100}$ acres out of the northern portion of the Lovic P. Moore survey; that appellee rode across the land with appellant and pointed out a fence between himself and C. D. Foote, which appellee said was his south boundary line and the dividing line between the portion of the Moore survey owned by him and the portion owned by Foote; that the boundary line so shown was straight, had no offsets in it, and included a tract of $102\frac{8}{10}$ acres, now claimed by Broome. The surveyor Taylor testified, that running the lines of the Moore survey as he did, it conflicts with the Southern Pacific Railway survey No. 96, $162\frac{1}{10}$ acres; that it does not include the Broome tract of $102\frac{8}{10}$ acres; that, leaving out these two tracts, the northern portion of the Moore survey—that is, the portion north of a line running west from the northwest corner of the Southern Pacific Railway survey No. 75 (which line is the north boundary line of the Foote tract) would include $2106\frac{7}{10}$ acres; that between this line and the north line of C. D. Foote's fence are fifty-eight acres of the Moore survey.

This evidence, which is undisputed, constrains us to the conclusion that instead of a deficiency of 152½ acres, as found by the court, there is a deficiency of $313\frac{3}{10}$ acres in the tract which appellee contracted to sell to appellant. Appellee undertook to convey this tract of $2420\frac{49}{100}$ acres by good and sufficient deed, by which we understand is meant a deed with covenant of warranty. This contract appellee has failed to perform to the extent of $313\frac{3}{10}$ acres. Appellant would hence be entitled to a credit for this number of acres at $4.50 per acre; but we find that in his pleadings he alleges that there are actually 2121 acres in the tract in question. It follows that as he has averred a deficiency of only $299\frac{49}{100}$ acres, his relief will have to be limited to that number at $4.50 per acre. He is therefore entitled to a credit, in excess of what the court below awarded him, of $146\frac{9}{10}$ acres at $4.50 per acre, or $661.05.

We consequently recommend that the judgment of the court below be reversed, and that it be here reformed and rendered, so that the appellee shall recover from the appellant the sum of $833.81, with interest

at 8 per cent from the date of the judgment below, that appellant pay all costs incurred below, and that appellee pay all costs incurred in this court.

*Reformed and rendered.*

Adopted December 1, 1891.

FISHER, Judge, being disqualified, did not sit in this case.