## WILLIAM H. WILLIAMS V. S. A. WINSLOW.

### No. 7166.

1.   **Survey—Footsteps of Surveyor.**—In the application of the rule that "the footsteps of the surveyor upon the ground should be followed by whatsoever rule they may be traced," it is necessary that the actual survey (the footsteps) be found and identified to be traced before course and distance should be ignored.

2.   **Identification of Line of Survey.**—In an attempt to prove an actual line of a survey the witnesses did not agree upon its locality; the testimony to its location differed 54 varas.   With reference to a line so uncertain the footsteps of the surveyor can not be said to have been traced.

3.   **Actual Survey.**—To extend a survey beyond its calls for course and distance, it is necessary to fix the line as that made or intended by the surveyor.

4.   **Fact Case.** — See facts held sufficient to identify a survey, and requiring the judgment ignoring it to be reversed and judgment here rendered upon the identification of the survey.   It is not a case of conflict in evidence.   See facts.

APPEAL from Parker.   Tried below before Hon. J. W. PATTERSON. No statement is necessary.

*B. G. Bidwell,* for appellant.—1.   When a patent or deed calls for certain known and established natural or artificial boundaries, these can not be controlled by parol proof of a survey inconsistent with them. Marked lines only control course and distance when they can be found and traced.   The actual survey must be found and identified as the same called for in the patent.   Robertson v. Mosson, 26 Texas, 248; Anderson v. Stamps, 19 Texas, 460; 34 Texas, 44.

2.   Both of the surveys should be upheld if it can be done.   No conflict should be held to exist unless it is clearly shown from the evidence.   It is the duty of Winslow, who claims a conflict, to show his lines and corners.   Phillips v. Ayres, 45 Texas, 601; Castleman v. Pouton, 51 Texas, 84.

3.   The court erred in failing to give plaintiff judgment for all the land sued for and included in his patent, and in giving defendant judgment for part of the land included in plaintiff's patent.

*John T. Harcourt,* for appellee.—A line called for in a survey may be entirely disregarded in determining the location of the survey, when other calls in conflict therewith are found to be more material and certain.   Jones v. Andrews, 62 Texas, 652; Stafford v. King, 30 Texas, 258; Boon v. Hunter, 62 Texas, 588.

TARLTON, JUDGE, *Section B.*—April 6, 1889, William H. Williams, appellant, filed his petition in the District Court of Parker County, against S. A. Winslow, appellee, in the form of an ordinary

action of trespass to try title to recover 160 acres of land in Parker County, patented in 1860 to T. F. Cheek, assignee of G. W. Fox.

The defendant Winslow pleaded general demurrer, not guilty, and the statutes of three, five, and ten years limitation. The pleas of limitation apply to the B. J. Stephens survey of 320 acres lying in Parker County.

The real controversy involves the title to a strip of about forty acres of land. This strip the appellant Williams claims to be out of the G. W. Fox survey, admittedly the property of appellant; while the appellee Winslow claims it to be out of the B. J. Stephens survey, admittedly the property of appellee. The Stephens survey is older than the Fox, and the issue is as to the true location of the north boundary line of the former.

As we gather from the record, the following diagram (save as to the course of the creek, of which the evidence does not inform us) is believed to be a substantially correct representation of the location of the two surveys and of the conflict in question:

The measurement north and south, in varas, of the conflict is not stated on the diagram, because, as will hereafter appear, neither the testimony in the case nor the judgment of the court fixes such measurement, except approximately.

The court adjudged to the plaintiff the land described in the petition, less that found by it to be included in the conflict. It adjudged to the defendant the land within the conflict.

As already indicated, the controversy arises out of an alleged conflict between the north line of the Stephens survey and south line of the Fox. The court's conclusions of law and fact are as follows:

"Findings of fact: That the plaintiff is the owner of the G. W. Fox survey, and that the defendant is the owner of the B. J. Stephens survey. That the Fox survey calls to begin at the northwest corner of the Stephens, and to run east with the north boundary line of the Stephens. That in the patent for the Stephens survey the east and west lines of said survey are stated to be 1900 varas. That said lines as run on the ground are about 2200 varas long, making an excess in said survey of about forty acres. That there is a shortage in the Fox survey of the same amount. That the boundary line between said surveys is about 2200 varas north from the southwest boundary line of the said Stephens survey."

"Conclusions of law: That as the Stephens survey was run out on the ground, the east and west lines will be extended beyond the call for distance to the line actually run on the ground. That the plaintiff can not recover below the line as run upon the ground."

The sole assignment of error requiring attention from us is the following: "The court erred in finding as a fact, that the east and west lines of the B. J. Stephens survey are 2200 varas long, when in the patent they call for 1900 varas; and that there is an excess in said survey of forty acres. There is no evidence that can support this finding."

The description of the disputed strip as stated in the judgment, and which we deem it material to insert, is as follows: "Situated in the north boundary line of the said B. J. Stephens survey, beginning at what the defendant claimed to be the northeast corner of said survey, a stake in an open brushy glade near the foot of a hill, among some small postoaks and blackjack brush; thence due west at and near the fence of said defendant to south prong of the Clear Fork, 560 varas; thence on said line in all 950 varas to a rock in a swag for corner, seven varas from Burgess Creek on the east boundary line of the James Williams survey; thence due south about 246 varas with said Williams line, a corner on the east boundary of said James Williams survey; thence due east 950 varas a corner on the east boundary line of said B. J. Stephens survey; thence north about 246 varas with said east line to the beginning."

The field notes of the Stephens survey, which, though prolix, we also insert as necessary to a proper understanding of this opinion, are as follows: "Beginning at a stake 4800 varas west and 2000 varas north from the southwest corner of a 320-acre survey made for J. B. Hibbert, from which two spotted oaks bear south 83 degrees east 3 varas; thence north 1140 varas, crossing south prong of Clear Fork, 1900 varas to a stake, whence a blackjack bears north 45 degrees e st 30 varas; thence west 560 varas crosses south prong of Clear Fork, 950 varas to a corner in the east line of the J. Williams survey 440 varas south from his northeast corner; thence south 1460 varas to his southeast corner, 1900 varas to a stake, from which a liveoak bears north 15 degrees west; thence east 950 varas to beginning."

The theory of the appellant is, that the field notes of the patent should, under the facts, control; that according to these field notes the Stephens survey receives its full complement of land, and that the evidence does not justify an extension of its boundaries.

The theory of the appellee is, that the course and distance of the east and west lines must in this case yield to the behests of an actual survey which he contends was made upon the ground, and which he contends requires an extension of these lines.

It devolves upon us to test the merits of each of these theories.

The undisputed testimony is, that the beginning corner of the Stephens survey is well fixed and defined. So is the point on the east line calling for the south prong of Clear Fork Creek at 1140 varas. So it is undisputed, that coursing west on the north line the south prong of Clear Fork Creek called for in the field notes is encountered at about the distance (560 varas) named in the patent. From the creek, a further coursing along this line of 950 varas, as suggested by the field notes, encounters the east line of the J. Williams survey. This survey is old and is well known. Its northeast corner, called for in the Stephens field notes, is clearly fixed and identified. From the point reached on the east line of the Williams survey to its northeast corner the actual distance, according to the testimony of the two surveyors, witnesses of the appellant, is 450 varas; according to the testimony of the one surveyor, witness of the appellee, it is 440 varas, the exact distance called for in the Stephens field notes. From this point, running south, the southeast corner of the Williams survey is found at the exact distance (1460 varas) called for in the Stephens field notes, and coursing yet further 1900 varas, the distance called for, we reach the southwest corner of the survey as called for in the patent, plain and well defined.

Thus an actual survey in accordance with the Stephens field notes justifies the conclusion that three of its corners are established, viz., the southeast (or beginning) corner, the northwest corner, and the southwest corner. It remains only to establish the northeast corner; and this may be done by course and distance from the corners already formed.

Jones v. Andrews, 62 Texas, 652. If by this means we find the northeast corner of the Stephens survey, it will have its full area as called for in the patent, and the theory of the appellant would be maintained. To support the theory contended for by the appellee, the following facts are relied on:

1. No bearing tree can be found at the distance called for, 1900 varas, on the east line of the Stephens survey, and this point is in an elm thicket; whence it is to be concluded (as appellee holds), that no blackjack such as called for in the field notes would have been probably found there when the survey was made, about thirty-five years ago.

2. A witness (McKamey, the original patentee) testified, that he was present when the land was first surveyed in 1854. His testimony is to the effect, that the surveyor fixed the northeast corner at a point further north than 1900 varas (how far or exactly where he fails to state), and that he showed Winslow the lines and corners of the survey.

3. The appellee Winslow testified, that in 1860, when he purchased from McKamey, the latter showed him the lines and corners of the survey, that they were where he now claims them to be, and that the line on the north and the corners were well marked with bearing trees.

4. A surveyor (Adair) testified, that he ran the north line as claimed by Winslow, and on going west found the creek at the distance (560 varas) called for in the field notes.

5. It was shown for appellee, that on this line there were stumps, and near the creek two or three marked trees.

6. It was proved by a negro, that he dug up the blackjack roots in a field "near by where Winslow said the corner was."

No bearing trees were found either at the northeast or northwest end of the line claimed by Winslow. Several witnesses for the plaintiff denied that there were any marked trees thereon. The two surveyors for the plaintiff contradicted the statement of the one surveyor for the defendant with reference to the distance of the creek from the east line claimed by Winslow. They stated, that this distance on the north line claimed by Winslow is greater than on the north line claimed by Williams.

Appellee relies upon the oft-announced doctrine, that the actual identification of the survey, the footsteps of the surveyor upon the ground, should always be followed, by whatever rule they may be traced. Stafford v. King, 30 Texas, 257. This doctrine, however, can not be invoked unless the facts show it to be applicable. The actual survey must be found and identified—the footsteps of the surveyor must be traced before course and distance should be ignored. Anderson v. Stamps, 19 Texas, 465; Robertson v. Mosson, 26 Texas, 248.

To extend the east and west lines beyond the distance stated in the patent, it devolved upon the appellee to prove that a line north of that claimed by the appellant was actually traced by the surveyor.

Has the appellee fulfilled this task? If so, what is the location of the line so traced? Neither the appellee nor his vendor and witness Mc-Kamey state the extent of its distance beyond the point reached at 1900 varas on the east line of the survey. The appellee does not appear to have claimed a uniform line. The witnesses for the plaintiff say, that the line claimed by Winslow is 300 varas north of that claimed by Williams; the witness for the defendant testifies, that it is 275 varas north. The court in its conclusions of fact finds, that the distance between the two lines is *about* 300 varas. In its judgment, it finds the distance to be about 246 varas. The court, also in its judgment, for the purpose evidently of fixing the northwest corner, refers to "a rock in a swag for corner 7 varas from Burgess Creek on the east boundary line of the James Williams survey;" while the record is wholly silent as to Burgess Creek.

A line can not be said to be traced and identified which thus *oscillates,* so to speak, between two locations and courses 54 varas distant the one from the other. With reference to a line so uncertain, the footsteps of the surveyor can not be said to have been traced.

Under the facts of this case, it was the duty of the appellee, seeking to extend the boundaries of this survey beyond its apparent calls and beyond the area to which it is entitled, to fix his line—to trace the footsteps of the surveyor and to establish his corners. Phillips v. Ayres, 45 Texas, 602. This in our opinion he has failed to do. On the other hand, so coincident are the locative calls of the patent with many of the objects found on the ground—the creek on the east line at precisely the proper distance, the creek on the north line at substantially the proper distance, the northwest corner identified by the call for the northeast corner, old and well established, of the Williams survey, the call at the proper distance on the west line for the southwest corner of the Stephens—that we are irresistibly led to the conclusion that the theory of the appellant is correct. According to the field notes of the patent, the land thereby covered can without difficulty be so identified as to locate it where it is claimed by the appellant to be. This should be conclusive. Boon v. Hunter, 62 Texas, 588.

If the record presented simply a conflict in the evidence, this case should be affirmed. But in our opinion it presents more: it presents a case in which the evidence on which the court below rendered judgment for the defendant is intrinsically weak and will not support the judgment.

We think that the judgment should be reversed and here rendered for the appellant; that he should recover the land described in his petition, with the costs of both courts; that the northwest corner of the B. J. Stephens survey should be fixed, as called for in the patent, at a point in the east line of the J. Williams survey, 440 varas south from

the northeast corner of the J. Williams survey; and that a line running thence east 950 varas should constitute the north line of the Stephens survey and the south line of the G. W. Fox survey. We so recommend.

*Reversed and rendered.*

Adopted April 19, 1892.