LOVE et al. v. JONES.

(Court of Civil Appeals of Texas. San Antonio. May 31, 1911. Rehearing Denied June 28, 1911.)

1. TRIAL (§ 296*) — INSTRUCTIONS — INSTRUCTIONS CURED BY OTHERS.

An instruction which in connection with others could not mislead the jury is not errone-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

ous because it might have that effect if taken alone.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–718; Dec. Dig. § 296.*]

2. BOUNDARIES (§ 3*) — SURVEYS — CONFLICTING CALLS.

An office survey of certain lands laid off blocks from a known line by courses and distances and then called for the line of another block. There was nothing to show that the line of the block called for was in existence at the time of the office survey, and if that call prevailed the blocks so laid out would contain about four times as much as was intended. *Held* that, as the line of the block called for was not shown to be in existence, the rule that a call for a marked line of an older survey will prevail over a distance call has no effect, and it not appearing that the line of the second block was marked either by natural or 'artificial monuments, that call cannot as a matter of law prevail over the calls for courses and distances.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

3. BOUNDARIES (§ 3*) — SURVEYS — CONFLICTING CALLS—EVIDENCE.

Where the land contained in an office survey was described and, as laid out by courses and distances, embraced only the amount of the description, that fact would justify the jury in finding that the surveyor did not intend to include other land which would be included if effect were given to calls for the line of another survey.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

Appeal from District Court, Hale County; I.. S. Kinder, Judge.

Action by H. P. Jones against G. E. Love and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Madden, Trulove & Kimbrough, Turner & Wharton, and Hendrix & Smith, for appellants. Matthews & Williams and Montgomery & Britain, for appellee.

FLY, J. This is a suit instituted by appellee, in the nature of an action of trespass to try title to two surveys of land, H. P. Jones, original grantee, against 17 parties, 13 of whom are appellants herein. It was agreed by the parties, however, that "no question of paper title is involved in this suit, and defendants have paper title to their respective numbered surveys, wherever properly located, claimed by them, which surveys are described in their answer, and it is a question of boundary only in this case, and either party may use any records." The cause was tried by jury, the result being a verdict and judgment in favor of appellee.

Appellants make no clear statement in their brief which would establish the identity and location of the land in controversy, but plunge in medias res, assuming, it would seem, that this court is fully acquainted with all the circumstances surrounding the contentions of the parties. We ascertain, however, that the land in controversy is a tract of land immediately south of what is known as block M. 10. It is the contention, it appears, of appellants that blocks M. 8, M. 9, M. 10,

W. I., R. C. M. 13, M. 15, C. 3, C. 4, and J. K. should be treated as one survey and that the excess which iundoubtedly exists, and which was sold by the state to appellee, should be parceled out among those surveys, in which distribution the land in controversy would fall to the portion of block M. 10 and block M. 15.

It is the contention of appellee that the south lines of block M. 10 must be located by course and distance from block B. 4 on the north, which is an older survey than M. 10. The latter was an office survey made by Summerfield in 1878, and it lies immediately south of and is tied to block B. 4 which was surveyed on June 30, 1875, and block 6 is tied to block B. 4 on its west. The southwest corner of block 6 which is the southeast corner of block 5 is established and of course the south lines of those two surveys are fixed by that corner. The surveys were made by Hedrick in 1875. Block M. 10 was an office survey made on May 28, 1878, and of course its position must absolutely depend upon the calls for course and distance. Blocks M. 10 and M. 15 have all the land that their field notes call for as have the appellants in their surveys lying in the extreme southern part of M. 10, and the eastern part of M. 15. The location of block A. south of M. 10 is fixed, and there was a vacancy between the two blocks unless M. 10 is extended to the south so as to connect with A. Blocks M. 6, M. 8 and M. 9 were located before J. K. C. 3, C. 4 and S. 1 were located and their location cannot in any manner affect the location of the older surveys. Blocks M. 8 and M. 9 each call to connect with block 6 on its south line, which is established, so that the location of those two blocks is fixed. Block M. 10 calls to connect with M. 9 on the west of M. 10, as well as survey R. C., which lies directly south of M. 9.

[1] The first assignment is long and complicated, purporting to present several errors in paragraph 3 of the court's charge, but in the proposition under the charge it is stated that "the work of the original surveyor must control, and surveying done by a junior surveyor many years thereafter cannot fix or determine the true location of the land," and we gather that the attack is being made on the charge because the court informed the jury that they should ascertain "the intention of the surveyor or surveyors in locating and surveying the lands, and said intention is to be arrived at from the work of the surveyor or surveyors on the ground, if any, from the language and calls in the field notes returned by the surveyors, considered in connection with all the evidence in the case, if any, that may tend to throw any light upon the meaning and intention of the surveyors in locating and surveying the lands in controversy." It is true, as stated, that the

work of several surveyors was in evidence, but we do not think the charge had a tendency to confuse the jury, when the criticized paragraph is read in connection with paragraph 4, in which the verdict is made to turn upon the intention of Summerfield upon whose testimony appellants largely depend.

The second assignment of error is quite a complex attack on the fourth paragraph of the charge. The first proposition is that it is error to authorize the jury to find a verdict in support of a theory not sustained by the evidence. In answer to this it may be said the charge had evidence to sustain it. There was evidence tending to show that Summerfield in surveying and locating sections 39 and 40, south of M. 10, intended to have his calls for course and distance to govern, and that he called for block A. by mistake, and that call should be rejected. As stated by Hutchinson, a surveyor, introduced by appellants, there is no call for anything in M. 10 and M. 15 to give them any excess unless it was the call made by Summerfield in surveys 39 and 40 for block A.

[2] There were no actual surveys of sections 39 and 40 by Summerfield, but they were office surveys, and although calls for course and distance are considered less unreliable than calls for natural and artificial objects, yet where neither of those classes of objects is called for in a survey the calls for course and distance must prevail. Now in this case, we think that the south line of M. 10 must be and is fixed by the calls for course and distance, and it appears that the surveyor thought there was only about 1,100 or 1,200 acres of land between block M. 10 and block A., and that he only called for block A. under a mistaken view that its north line was only the distance called for by him in his field notes. The field notes of the two surveys give about 1,200 acres of land, while the vacant land between the two surveys amounted to about 3,000 acres. There is nothing to indicate that the north line of block A. was, at that time, known and indicated by natural or artificial objects either at its corners or along the line. Under such circumstances the rule that the call for a marked line of an older survey will prevail over distance has no force or effect. Booth v. Upshur, 26 Tex. 64; Freeman v. Mahoney, 57 Tex. 626; Boon v. Hunter, 62 Tex. 582; Fagan v. Stoner, 67 Tex. 286, 3 S. W. 44; Duff v. Moore, 68 Tex. 270, 4 S. W. 530; Gerald v. Freeman, 68 Tex. 201, 4 S. W. 256; Gregg v. Hill, 82 Tex. 405, 17 S. W. 838; Reast v. Donald, 84 Tex. 648, 19 S. W. 795; Ware v. McQuinn, 7 Tex. Civ. App. 107, 26 S. W. 126; Bennett v. Latham, 18 Tex. Civ. App. 103, 45 S. W. 934; Holdsworth v. Gates, 50 Tex. Civ. App. 347, 110 S. W. 537.

In the cited case of Booth v. Upshur there was a call for the line of a certain grant, and, in discussing the question, the court, through Judge O. M. Roberts, said: "There is no law fixing the effect of any call found in a grant, or giving one more weight or importance than another. Therefore, by merely looking at the face of the grant, which has several calls, the controlling call cannot be determined. Courts that have had to determine between conflicting calls, upon motions for new trials and otherwise, have laid down rules for their decision, founded on reason, experience and observation, which are rules pertaining, not to the admissibility, but to the weight of evidence. They have generally agreed upon a classification of and gradation of calls in a grant, survey, or entry of land, by which their relative importance and weight are to be determined. The first class of calls are natural objects, such as rivers, creeks, mountains, etc.; the second are artificial objects, such as marks on trees, and marked lines, etc.; and the third are course and distance. Thus, in the abstract, or other things being equal, a river prevails over a marked line, and a marked line over course and distance. Still, the lowest grade, to wit, course or distance, is made to prevail over the highest grade, to wit, rivers, creeks, etc., when, upon applying the calls of the grant to the land, the surrounding and connected circumstances adduced in proof to explain the discrepancy, show that course or distance is the most certain and reliable evidence of the true locality of the grant."

In the cited case of Bennett v. Latham, the facts were somewhat similar to the facts in this case, and the court held: "If, as has sometimes happened, the distance between the lines of two surveys called for in an intermediate junior survey is greater than is called for in the field notes of the latter, the question arises whether or not, in ascertaining the true boundaries of the survey, the call for the older line, or for course and distance shall prevail; and the courts, under some circumstances, hold that the line should stop when the distance indicated is covered, and that the call for the older line should be disregarded as having been made by mistake."

Both surveys 39 and 40 call for quantity, course, and distance, and also to adjoin both block M. 10 and block A. Neither of the lines of the blocks call for natural or artificial objects, the surveys were made in an office, the surveyor intending to convey the quantity of land indicated by the field notes and not four times as much. It then was a matter for a jury to determine, whether the lines should be increased in length so as to include perhaps 3,000 acres of land instead of 1,180 as described by the field notes. As said in Booth v. Upshur: "If the lines had been plainly marked, the distance or quantity of land might not have prevented these surveys from including the quantity of land in the whole space. And so, also, if the objects called for on each side had been mountains, rivers, or other natural objects that must have been well known, and about which a mistake could not reasonably have been made. If, however, the objects on the two

sides were called for upon mere supposition that they were just far enough apart to include the surveys according to the distance called for, then the objects at the sides would be suppositious calls, and the distance and quantity might control."

[3] The surveys of tracts 39 and 40 being office ones, the surveyor could not have intended to have the state lose perhaps 2,000 acres of land, but he must have intended that the tracts should contain the number of acres, named and described in the field notes. Robinson v. Doss, 53 Tex. 496. As in that case, so in this, the discrepancy in the distances and in the amount of land actually described and that claimed rendered it improbable that the surveyor intended to include the larger amount. While these considerations might not of themselves be sufficient to require that a call for course and distance should control a call for an unmarked line in a prairie, still they form circumstances that would justify a jury in finding that the surveys did not include all the land between M. 10 and A. Hubert v. Bartlett, 9 Tex. 104; Booth v. Strippleman, 26 Tex. 436.

We think the fourth paragraph of the charge was not vague, indefinite, uncertain, or erroneous, and was not calculated to, nor did it, mislead the jury. The charge is clear and explicit and stated the only real issue in the case clearly to the jury.

There is no merit in the third assignment of error. The jury was not misled by the use of the word "surveyed" in the charge, and there was no assumption of any fact upon the part of the court.

The fourth assignment of error is overruled. The location of blocks M. 10 and M. 15 was fixed by the calls for course and distance and it was not error to allow the jury to find as to whether surveys 39 and 40 were located by their lines. The fact that M. 10 and M. 15 were office surveys did not prevent their lines from being located by course and distance, the only way in which it could reasonably be done. We do not think that appellants should be allowed to claim that the blocks cannot be properly located because they were office surveys and then lay claim to all the land in the vicinity, because it is uncertain, under their theory, as to where the blocks are situated. If appellants desired that the jury should have been minutely instructed as to the rules governing course and distance they should have formulated a charge on the subject and have requested the court to give it. We incline to the opinion, however, that it would be absolutely unnecessary to go into such details with any ordinary jury.

The pre-emptions approved by the state on part of the vacancy between blocks M. 10 and block A. still left the land sold by the state to appellee. Every one has received all the land he purchased, appellants were allowed pay for their improvements made on appellee's land, and there is no reasonable ground for complaint on the part of any one.

We believe that the verdict is sustained by the facts and circumstances, and that it meted out exact justice to every one concerned, and the judgment will be affirmed.