STEIN v. ROBERTS et al.    (No. 499.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 3, 1919. On Rehearing, Dec. 10, 1919.)

1. BOUNDARIES 3(5)—CALLS FOR COURSE AND DISTANCE PREVAIL OVER CALL FOR LINE OF A SENIOR SURVEY IF LINE IS UNCERTAIN.

Calls for course and distance prevail over a call for the line of a senior survey, if that line itself is indefinite and uncertain.

2. BOUNDARIES 37(3)—EVIDENCE AS TO SURVEYED LINE.

Evidence held to support finding that the location of a boundary line of a senior survey was uncertain and continued uncertain for a number of years.

3. BOUNDARIES 33 — BURDEN ON ONE CLAIMING BOUNDARY TO BE FIXED BY SURVEYED LINE.

One claiming under a boundary as fixed by surveyed line had the burden of proving the actual location of such line on the ground, before a call for course and distance, giving him a smaller area of land, could be ignored.

4. TRESPASS TO TRY TITLE 12—EFFECT ON CLAIM OF FENCING AND CULTIVATING LAND.

Where claimants under a senior patent had fenced a strip of land in dispute and cultivated, used, and enjoyed it, these facts raised a presumption of title and entitled them to recover in trespass to try title against one showing no better title.

5. APPEAL AND ERROR 728(1), 733—ASSIGNMENTS OF ERROR TOO GENERAL AND INDEFINITE.

In trespass to try title, assignments of error that the court erred in rendering judgment on defendant's cross-action "because the defendants did not show title to the land described in their cross-action," and "because such judgment is contrary to the evidence," and that "the court erred in failing and refusing to render and enter judgment in this cause for plaintiff for the land sued for by him," describing it, and that "the court erred in admitting in evidence" certain survey field notes, were too general, and failed, as required by rules 24 and 25 of the Court of Civil Appeals (142 S. W. xii), to specify distinctly the grounds of error relied on.

---

**6. APPEAL AND ERROR ☞1050(2)—HARMLESS ERROR IN ADMITTING EVIDENCE.**

If there is sufficient evidence to sustain the verdict, the judgment will not be reversed because immaterial facts are admitted, unless such admission probably influenced the jury in its findings.

**7. APPEAL AND ERROR ☞1071(5)—HARMLESS ERROR IN FINDING IMMATERIAL FACTS.**

The finding of immaterial facts is not ground for reversal, if the judgment ·is not in conflict with the findings upon material issues.

Appeal from District Court, Liberty County; J. L. Manry, Judge.

Trespass to try title by I. A. Stein against Vivian Roberts and others. From the judgment rendered, plaintiff appeals. Affirmed.

J. F. Dabney, of Liberty, and J. B. & Chas. J. Stubbs, of Galveston, for appellant.

E. B. Pickett, Jr., of Liberty, for appellees.

WALKER, J. This suit was brought in the form of trespass to try title by appellant, I. A. Stein, as plaintiff, against the appellees for title and possession of the Conrad Eigeneaur 640-acre survey situated in Liberty county, Tex., about 11½ miles south 46° east from the town of Liberty, described by metes and bounds, but excepting from the same two tracts of 160 acres each formerly conveyed off of same. The Eigeneaur survey was described in plaintiff's petition as follows:

"Beginning at a stake in mound at northeast corner ·of the Robert Whitlock survey on the south boundary line of ' the Joseph Dunman league; thence south 1 E. with Robert Whitlock east boundary line 810 varas, said Robert Whitlock's S. E. corner also the N. E. corner of the Mary Hawley survey 1,248 varas to the N. W. corner of the Silas Smith survey a stake and mound; thence N. 89 E. with said Smith's north line 2,895 varas corner a stake in mound at said Smith's north line; thence north 1 west 1,248 varas intersected at south boundary line of the Joseph Dunman league a stake in prairie; thence south 89 west with said Dunman's line 2,895 varas to the place of beginning."

The defendants, in their answer, disclaimed as to any of the land sued for except that set out in their answer, which is described as a part of the Silas Smith survey, and in addition thereto pleaded a cross-action against the plaintiffs and asked for judgment thereon for title and possession of the land described in their answer. The case was tried before the court without a jury. The court rendered judgment for the defendants upon their cross-action against plaintiff for the land described in their crossaction and for the plaintiff on the disclaimer of defendants for the land sued for by him outside of that claim in the defendants' answer.

The field notes of the Silas Smith survey call to run with the south line of the Mary Hawley survey agreed to be what is now the J. S. Mayfield survey to its southeast corner, and thence north 1° west with its east line 372 varas, mound and post for corner; this being the beginning corner hereafter described. While this is in form a suit ·in trespass to try title, it is in fact a boundary suit to determine the common line between the Eigeneaur on the ' north and the Silas Smith on the south. Appellant states the contentions of the parties as follows:

"Appellant claims that the S. W. corner of the Conrad Eigeneaur survey is situated at a point on the east line of the J. S. Mayfield 372 varas N. of its S. E. corner, for the N. W. corner of the Silas Smith survey, and appellees claim that the N. W. corner of the Silas Smith survey is situated on the east line of the J. S. Mayfield survey, 543 varas N. of its S. E. corner. The N. E. corner of the J. S. Mayfield survey, which is also the S. E. corner of the Robert Whitlock survey, is indisputably located, the original bearing trees for it having been found there, and the S. E. corner of the Mayfield is located undisputedly at a point 543 varas south of where appellees claim the N. W. corner of the Silas Smith survey is located, and this location is the distance called for in the field notes of the Mayfield from its N. E. corner. That is, appellees claim the N. W. corner of the Silas Smith survey to be located 171 varas further north than the Silas Smith field notes call for, while appellant claims that the S. W. corner of the Conrad Eigeneaur is located 372 varas N. of this recognized S. E. corner of the J. S. Mayfield survey and 171 varas south of the distance recited in the field notes of the Eigeneaur survey for the length of its west line."

The beginning point of the Silas Smith survey is given as follows:

"Beginning on the east boundary line of the J. S. Mayfield survey at a point 267 varas south 2 degrees east from a stake in the northeast, corner of said Mayfield survey, which is also the southeast corner of the Robert Whitlock survey from which a stake a black jack bears north 19 east 77 varas marked X and a much older and smaller X underneath."

From that point the Silas Smith survey extends east, its west line being described above. It is not necessary, for the purposes of this opinion, to give the field notes in full, as this beginning point of the Silas Smith is the point in controversy in this case.

On request of appellant, the trial court filed findings of fact, which are as follows:

"(1) I find that the northwest corner of the Conrad Eigeneaur survey is a well-known, wellestablished corner and is a common corner with the northeast corner of the Robert Whitlock

☞ For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

survey and located on the south boundary line of the Joseph Dunman league.

"(2) I find that the original surveyor who located the said Conrad Eigeneaur survey established its southwest corner at a point south 1 degree east 1,248 varas from the said northwest corner of the Eigeneaur survey, and this southwest corner of said survey so established by the original surveyor is located on the east boundary line of the J. S. Mayfield survey, and such southwest corner is now marked and identified upon the ground by an iron stake.

"(3) I find that at the date the said Eigeneaur survey was originally surveyed, the location of the northwest corner and north line of the Silas Smith survey was uncertain and not definitely known, and that such doubt and uncertainty about the location of that northwest corner and north line continued to exist for a number of years.

"(4) I find that before this suit was filed, the defendants fenced that portion of the land particularly described in their first amended original answer filed herein and cultivated in rice a part of the land so fenced, and they were so in possession of the land and actually occupying and using it at the time and before this suit was filed.

"(5) I find that the Luther Steusoff or L. C. Steusoff 300-acre survey known as survey No. 105 was, upon his proper application to purchase same, regularly awarded to him by the state of Texas, and that thereafter all of his title thereto was acquired by Hugh Jackson, whose title, at his death, passed to defendants, and further I find that such Steusoff survey was located just south of and adjoining the said Conrad Eigeneaur survey and just east of and adjoining the above-mentioned J. S. Mayfield survey, and its northwest corner is located on the east line of said Mayfield survey 272 varas south of the northeast corner of said Mayfield survey, and further I find that the said J. S. Mayfield northeast corner is a common corner with the Robert Whitlock southeast corner, and that such corner is well known and well established and identified by the original witness tree which is still standing."

The location of the boundary line between the Eigeneaur on the north, and Smith on the south, has been in dispute for many years. At one time the state recognized a vacancy between these two surveys and patented the same to Luther Steusoff. Hugh Jackson, the ancestor of some of the appellees in this case, brought suit against Steusoff for this strip of land, claiming it to be a part of the Silas Smith, and recovered the same. This case is reported under the style of Steusoff v. Jackson, 40 Tex. Civ. App. 328, 89 S. W. 445. Reference is here made to this opinion for a map showing the west line location of these surveys.

In Steusoff v. Jackson, the appellees in this case recovered the land now claimed by them, and, before appellant instituted this suit, fenced the same and raised a rice crop on this disputed land. Appellees' fence is now practically on the line found by the trial court to be the correct dividing line between the Eigeneaur and Steusoff. There is no question as to the location of the northwest corner of the Eigeneaur, this being a well-established corner, and is the common corner with the northeast corner of the Robert Whitlock survey and is located on the south boundary line of the Joseph Dunman league. The north boundary line of the Eigeneaur is a common line with the south boundary line of the Joseph Dunman league.

By his eighth and ninth assignments of error, appellant questions the correctness of the court's location of the southwest corner of the Eigeneaur, and his finding that the north line of the Silas Smith was uncertain and indefinite at the time of the location of the Eigeneaur, and that such doubt and uncertainty about the location of the northwest corner and the north line continued to exist for a number of years.

[1] At its southwest corner, the Eigeneaur calls for the Silas Smith and calls for the south boundary line of the Eigeneaur to continue with the north boundary line of the Smith. The appellant, as plaintiff, had the burden of proving that in fact the boundaries of the Eigeneaur survey included the land he claimed, and, to extend the west line of said survey further south than 1,248 varas, he was compelled to trace the footsteps of the surveyor down to that point. The rule is well settled that call for course and distance prevails over a call for the line of a senior survey if that line itself is indefinite and uncertain. Duff v. Moore, 68 Tex. 270, 4 S. W. 530; Gerald v. Freeman, 68 Tex. 201, 4 S. W. 256; Fagan v. Stoner, 67 Tex. 287, 3 S. W. 44; Bigham v. McDowell, 69 Tex. 102, 7 S. W. 315; Baker v. Light, 80 Tex. 627, 16 S. W. 330; Williams v. Winslow, 84 Tex. 377, 19 S. W. 513; Gregg v. Hill, 82 Tex. 409, 17 S. W. 838; Johnson v. Archibald, 78 Tex. 102, 14 S. W. 266, 22 Am. St. Rep. 27; Miller v. Campbell, 171 S. W. 251; Crosby v. Stephenson, 156 S. W. 1114; Goodson v. Fitzgerald, 40 Tex. Civ. App. 619, 90 S. W. 898.

[2] The court found that the location of the north boundary line of the Smith at the time the Eigeneaur was surveyed was uncertain and continued uncertain for a number of years. This finding is attacked by the appellant, but is amply sustained by the record. In fact, no other finding could have been made by the court on this point.

J. J. Anderson, a witness for appellant, testified that he was 63 years of age and lived in the vicinity of the Eigeneaur survey. Referring to the north boundary line, he said:

"It was unsettled and in dispute and was not a generally recognized line, never had been, fluctuated back and forth."

H. O. Compton, a witness for appellant, testified that he is and has been for 10 years

county surveyor of Liberty county; that the first surveying he did in connection with the Silas Smith was about 4 or 5 years ago, when the county employed him to make a survey and ascertain the exact acreage of the Silas Smith, and in making that location he accepted the northeast corner of the survey as recognized by State Surveyor Weed.

"The call in the Silas Smith field notes was 350 varas north of the southeast corner of the Mayfield, but since I had projected this old line that had been accepted by the land office in patenting the Robbins survey, I accepted it as the true north line of the Silas Smith survey, although it was a hundred varas discrepancy. It was a hundred varas further north than the field notes called it to be."

And further:

"As a matter of fact the Silas Smith line in that vicinity has been an uncertain quantity, and as a matter of fact there have been different claims as well as different locations for it even within my recollection."

R. G. Partlow, a witness for appellees, testified that the location of the north boundary line of the Silas Smith had been uncertain.

The finding "that the original surveyor who located the said Conrad Eigeneaur survey established its southwest corner at a point south 1 degree east, 1,248 varas from the said northwest corner of the Eigeneaur survey, and that this southwest corner of said survey so established by the original surveyor is located on the east boundary line of the J. S. Mayfield survey, and such southwest corner is now marked and identified upon the ground by an iron stake," is sustained by the authorities of this state.

Appellant admits that—

"There is no evidence of the footsteps of the surveyor at the southwest or southeast corners or along the south line of the Eigeneaur surveys or the north line or northwest or northeast corners of the Silas Smith survey."

As against this admission of appellant and as sustaining the judgment of the court, Surveyor Partlow testified that there is a natural mound at the northwest corner of the land decreed to appellees, that point being the southwest corner of the Eigeneaur as fixed by the trial court at the distance called for in the patent from its northwest corner, and this surveyor also testified that there is no mound at a point where the appellant contends that the southwest corner of the Eigeneaur should be fixed, and Compton made the same statement.

[3] Appellant has clearly failed to discharge the burden that rested upon him as plaintiff in showing the true location of the northwest corner of the Smith to be where claimed by him. Duff v. Moore, supra, is a case very much in point. Discussing the location of the dividing line between two surveys situated as the Smith and Eigeneaur, Justice Gaines said:

"It is apparent that there is a mistake in the junior survey in calling for the line of the older, or there is a mistake in the length of the lines, either of the one or of the other. If the error be in the distance, it seems to us it can be imputed with as much reason to the lines of the Yeoman as to those of the Whitcomb survey. * * * The burden was upon appellants to show that the patent under which they claimed embraced the land sued for. We think they failed to do this, and that therefore the court did not err in giving judgment against them."

The facts in Gerald v. Freeman, supra, are very much like the facts in this case. When the Smith and Eigeneaur surveys were made, this disputed land was a prairie. Discussing the facts, Chief Justice Willie said:

"The west line of the Chambers was wholly within the prairie, without natural or artificial objects by which it could be identified. Recognizing the principle that course and distance ordinarily yield to natural or artificial objects in arriving at the boundaries of a survey, this court declines to make them subordinate to an unmarked prairie line which could not itself be ascertained except by running the boundaries of another survey according to course and distance."

The same rule was announced in Fagan v. Stoner, supra; the court saying:

"We understand the true rule to be that when a marked line is called for in a grant, and that line can be identified, it will control a call for course and distance; not that because a marked line is found upon the ground the distance must be extended so as to reach it without proof that it was the line originally run by the surveyor as one of the boundaries of the survey. The fundamental principle in all cases is to ascertain where the survey was actually made upon the ground; or, as it is sometimes expressed, the footsteps of the surveyor must be followed, if their locality can be traced, although the effect may be largely to increase or diminish the quantity of land, which purports to be conveyed. There is nothing in the record to show that the court below in deciding the case did not keep in view this cardinal rule."

Discussing the weight to be given to course and distance, the Supreme Court, in Williams v. Winslow, supra, said:

"The actual survey must be found and identified—the footsteps of the surveyor must be traced before course and distance should be ignored. Anderson v. Stamps, 19 Tex. 465; Robertson v. Mosson, 26 Tex. 248.

"To extend the east and west lines beyond the distance stated in the patent, it devolved upon the appellee to prove that a line north of that claimed by the appellant was actually traced by the surveyor. Has the appellee fulfilled this task? If so, what is the location of the line so traced? Neither the appellee nor his

vendor and witness McKamey state the extent of its distance beyond the point reached at 1,900 varas on the east line of the survey. * * * A line cannot be said to be traced and identified which thus oscillates, so to speak, between two locations and courses 54 varas distant the one from the other. With reference to a line so uncertain, the footsteps of the surveyor cannot be said to have been traced. Under the facts of this case, it was the duty of the appellee, seeking to extend the boundaries of this survey beyond its apparent calls and beyond the area to which it is entitled, to fix his line—to trace the footsteps of the surveyor and to establish his corners. Phillips v. Ayres, 45 Tex. 602."

The facts in the case before us are even stronger than the case just quoted from. This record shows that some three of four lines have been claimed at various times to be the north boundary lines of the Silas Smith.

[4] The court did not err in rendering judgment for appellees on their counterclaim. The record shows and the court so found that they had fenced this land and had been in possession thereof cultivating, using, and enjoying the same, bringing this claim within the rule announced in House v. Reavis, 89 Tex. 626, 35 S. W. 1063; Allen v. Boggess, 94 Tex. 83, 58 S. W. 833.

[5] Appellant's second assignment of error is as follows:

"The court erred in rendering judgment on defendants' cross-action against plaintiff, because the defendants did not show title to the land described in their said cross-action."

The third assignment of error is as follows:

"The court erred in rendering judgment in favor of the defendants on their cross-action against plaintiff, because such judgment is contrary to the evidence."

The fifth assignment of error is as follows:

"The court erred in failing and refusing to render and enter judgment in this cause for plaintiff for the land sued for by him (then follows description of the land)."

The sixth assignment of error is:

"The court erred in admitting in evidence the field notes of L. C. Steusoff survey as complained of in plaintiff's bill of exception No. 3."

These assignments are too general and fail, as required by rules 24 and 25 of this court (142 S. W. xii), to specify distinctly the grounds of error relied on. Mynders v. Ralston, 68 Tex. 499, 4 S. W. 854; Falls, etc., Co. v. Chisholm, 71 Tex. 528, 9 S. W. 479; American Legion of Honor v. Rowell, 78 Tex. 677, 15 S. W. 217; Bynum v. Hobbs, 56 Tex. Civ. App. 557, 121 S. W. 902; Burrow v. Brown, 167 S. W. 254. We would also add that under the sixth assignment the statement submitted is not sufficient to comply with rule 31 (142 S. W. xiii). Jen-

kins v. Morgan, 187 S. W. 1091; Clark v. State, 189 S. W. 84.

By his seventh assignment of error appellant complains of the admission in evidence of the decree of the district court of Liberty county, Tex., in cause No. 2074, styled M. B. David v. D. R. White.

[6] The same objection might be urged against this assignment as against the sixth. However, it is sufficient to say, on both these assignments, that no error is shown in the admission of this testimony, and it does not appear probable that the admission of the field notes of the Steusoff or of the decrees in the David-White Case influenced the findings or conclusions of the trial court. This not appearing, no reversible error is shown. McCormack v. Crawford, 181 S. W. 489. In that case the court said:

"The rule is that, if there is sufficient evidence to sustain the verdict, the judgment will not be reversed because immaterial facts are admitted, unless such admission has probably influenced the jury in its findings."

See, also, Matthews v. Kirkland, 186 S. W. 428; Holman v. Houston Oil Co., 174 S. W. 886; Texas City Trans. Co. v. Winters, 193 S. W. 366.

By the tenth assignment of error, appellant complains of the fifth finding of fact. Appellee answers this assignment with the following counter proposition:

"The undisputed proof showed that the tract of land known as the L. C. Steusoff survey in this record was awarded to said Steusoff by the state on December 8, 1902, and that thereafter, in September, 1904, Hugh Jackson recovered from said Steusoff the land included within said survey by judgment of the district court of Liberty county. And therefore the court did not err in holding that the title to said Steusoff survey was acquired by Hugh Jackson and at his death passed to his heirs who are the appellees herein, nor did the court err in finding that said Steusoff survey was located 'just south of and adjoining the said Conrad Eigeneaur survey and just east of and adjoining the above-mentioned J. S. Mayfield survey 272 varas south of the northeast corner of said Mayfield survey,' because the undisputed proof shows that said Steusoff survey was so located, although it was canceled after the said judgment decreed to Hugh Jackson the land covered by said Steusoff survey."

[7] The facts in the record sustain this counter proposition. In Guffey v. Dinwiddie, 182 S. W. 446, the court discusses the rule laid down by the Supreme Court in Kelley v. Word, 94 Tex. 289, 60 S. W. 311, as follows:

"The finding of immaterial facts cannot be made ground for reversal, if the judgment is not in conflict with the findings upon material issues."

If it be conceded that the fifth finding of fact by the court, as copied above in this

opinion, is immaterial, this finding clearly comes within the rule just above announced.

By his eleventh and twelfth assignments of error, appellant complains of the conclusions of law made by the trial court. If we are correct in what we have said above, it naturally follows that the trial court was correct in the conclusions of law announced by him.

Finding no error in this record, this case is in all things affirmed.

### On Rehearing.

In the original opinion we inadvertently referred to the northwest corner of the Silas Smith survey as the beginning corner. This reference we here correct. The field notes of the Smith survey are given in full in Steusoff v. Jackson, 40 Tex. Civ. App. 328, 89 S. W. 445, referred to by us in the original opinion.

In his motion for rehearing, appellant complains of the disposition made by us of his second, third, fifth, and sixth assignments. We state in our original opinion that these assignments are too general and fail to specify distinctly the grounds of error relied on. However, we did dispose of the second and third assignments, and also of the sixth, and in the general disposition of the case we disposed of the fifth assignment. In view of his motion, we would add to our discussion of these assignments that, notwithstanding the manner in which they are briefed, we have carefully reviewed them and overrule same.

The motion for rehearing is in all things overruled.