[5, 6] The Civil Statutes (R. S. art. 10) expressly enact that:

"All oaths, affidavits or affirmations necessary or required by law may be administered * * * by any judge or clerk of a court of record, justice of the peace, or by any notary public."

So that because the complaint herein was sworn to by the sheriff before the justice of the peace, that of itself did not give the justice jurisdiction to try the case. Taking his belated testimony on the motion for new trial, it was sufficient to show that his placing his file mark on the complaint herein was by mistake and under a misapprehension of the facts. What he did about it occurred Sunday evening. As soon as his attention was called to the matter the next morning by the sheriff that this case was not to be tried before him, but before the county court, he issued the warrant for appellant's arrest, and made it returnable directly to the county court, and not to his court, and at once transmitted the complaint and warrant to the clerk, where it was proceeded upon and the trial had as stated above. He made no entry whatever on his docket, and, of course, not having any entry, he made no transcript of any of the proceedings to the county court, as was done in the Gill Case. Thus his testimony would show that as a matter of fact jurisdiction of this case had not really attached in his court. The county court unquestionably had jurisdiction of the grade of offense charged herein.

[7] Article 63 provides that when two or more courts have concurrent jurisdiction of any offense, the court which first gets jurisdiction shall retain it to the exclusion of all other courts. Of course, under this statute, if the justice court acquired proper jurisdiction of the case and that fact had been alleged and proven by appellant at the proper time, then the justice of the peace should have retained jurisdiction and disposed of the case. Appellant failed to prove this in proper time, and the testimony heard on the motion for new trial would justify the conclusion that the justice of the peace did not acquire jurisdiction to try the case, but that the county court did. Hence the court did not err in overruling appellant's motion for new trial, complained of in this bill.

The evidence without contradiction clearly showed, as stated above, that appellant gambled in two distinct games at different times during Saturday night, June 2d; the first early in the night, which made it on June 2d, and the last some time after midnight, which made it on June 3d.

The judgment is affirmed.

---

MAIN et ux. v. CARTWRIGHT.    (No. 778.)

(Court of Civil Appeals of Texas. El Paso. Jan. 17, 1918.   Rehearing Denied Feb. 14, 1918.)

1. BOUNDARIES ⊜⟹43 — JUDGMENT—FAILURE TO SETTLE ISSUE OF BOUNDARY.

Judgment in a boundary suit not identifying the grantee or the block in which the land is situated, and leaving the dividing line unsettled, is insufficient to settle the rights of the parties.

2. APPEAL AND ERROR ⊜⟹719(8)—ASSIGNMENT OF ERROR—INSUFFICIENT JUDGMENT.

Insufficiency in the judgment in a boundary suit, in that it does not settle the issue of boundary, is fundamental error, necessitating reversal, though not assigned.

3. PUBLIC LANDS ⊜⟹175(1) — LOCATION BY RAILROAD—VACANT LAND—"TITLED LAND" —"LAND EQUITABLY OWNED."

Where a section of land had not been patented to one railroad when another section overlapping to an extent was located for another railroad, on that date the first section was not "titled land," and was not "equitably owned" by the first railroad, within Const. art. 14, § 2, providing that all genuine land certificates heretofore or hereafter issued shall be located only upon vacant and unappropriated public domain, and not upon any land titled or equitably owned under color of title from the sovereignty of the state.

[Ed. Note.—For other definitions, see Words and Phrases, Titled.]

4. JUDGMENT ⊜⟹712 — PERSONS AFFECTED — ONE NOT A PARTY.

Where a railroad was not a party to the suit in which the state recovered a section of land from another railroad, its title to its own section of land overlapping the other was not affected by the judgment.

5. BOUNDARIES ⊜⟹3(6)—UNMARKED CORNER OR LINE AS CONTROLLING COURSES AND DISTANCES.

An unmarked corner or line is sometimes accorded the dignity of an artificial object, and permitted to control a course and distance call, but such controlling effect is not always given.

**6. BOUNDARIES ☞54(6)—LOCATION BY RAILROAD — PRESUMPTION AS TO LOCATION OF LINES ON GROUND BY SURVEYOR.**

Where there is nothing to indicate that the surveyor did not actually survey the lines of a section of public lands located by a railroad, and locate the same upon the ground, the presumption obtains that he did so, particularly where he fixed the location of one corner by reference to natural objects.

**7. PUBLIC LANDS ☞175(1) — LOCATIONS — CORRECTION OF FIELD NOTES — LAND BELONGING TO SCHOOL FUND.**

Land located by a railroad and recovered by the state and so belonging to the permanent school fund under Vernon's Sayles' Ann. Civ. St. 1914, art. 5385, was appropriated land, and it was not lawful for the Land Commissioner to correct the field notes thereof to reduce its acreage and take from it land belonging to the fund and in effect give it to another survey owned by an individual.

Appeal from District Court, Presidio County; Jos. Jones, Judge.

Suit by T. J. Cartwright against A. B. Main and wife. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

C. E. Mead and H. H. Kilpatrick, both of Marfa, for appellants. Belcher & Sutton, of Marfa, C. C. Belcher, of Del Rio, C. R. Sutton, of Marfa, J. A. Stephens, of Benjamin, and Ocie Speer, of Ft. Worth, for appellee.

HIGGINS, J. Appellee, Cartwright, brought this suit in the ordinary form of trespass to try title, the premises sued for being described as follows:

"Survey No. 529, block 8, Galveston, Harrisburg & San Antonio Railway Company grant in Presidio county, Texas, and described by metes and bounds as follows: 'Beginning at the N. W. corner of survey No. 528 said block; thence N. 1,900 vrs. to stake and mound; thence E. 1,900 vrs. to stake and mound; thence S. 1,900 vrs. to stake and mound; thence W. 1,900 vrs. to place of beginning."

Defendants, Main and wife answered by general denial and plea of not guilty. The case was tried before the court upon agreed facts. The trial court adopted the agreed statement as his findings of fact, and the appeal is submitted for review upon such findings. Such findings are as follows:

"(1) It is agreed: That the plaintiff is the owner of survey No. 529, block No. 8, Galveston, Harrisburg & San Antonio Railway Company, grant located in Presidio county, Tex. That said survey was located for the said Galveston, Harrisburg & San Antonio Railway Company on July 7, 1875, by L. E. Edwards, deputy surveyor of El Paso district, and approved by A. H. French, surveyor of the El Paso district. That said survey, as originally located on the ground by said surveyor and described by the original field notes as follows: 'Situated in El Paso district, on the waters of Alameto Ck. a tributary of Rio Grande river about ——— miles from Ft. Davis and known as survey No. 529, in block 8; beginning at the N. W. Cor. survey 528; thence N. 1,900 vrs. to st. and m., thence E. 1,900 vrs. to st. and m., thence S. 1,900 vrs. to st. and m.; thence W. 1,900 vrs. to st. and m.' That said section No.

529 was recovered from the Galveston, Harrisburg & San Antonio Railway Company by the state of Texas in the cause of the state of Texas v. Galveston, Harrisburg & San Antonio Railway Company, in the district court of Val Verde county, Tex., which said judgment was affirmed by the Supreme Court of Tex., June 27, 1891. That said section of land was afterwards placed on the market as state public school lands, and sold to V. A. Haffard August 28, A. D. 1909, as 640 acres, and the plaintiff became the owner by a regular chain of transfer, and is now the owner of same.

"(2) That the defendants, A. B. Main and wife, Mrs. L. Main, are the owners of survey No. 9, in block 347, T. C. Ry. Co. grant situated in Presidio county, Tex. That said survey No. 9 was located for the T. C. Ry. Co., by S. A. Thompson, deputy surveyor of Presidio county, Tex., on June 6, 1882, and by the original field notes of said survey was located and described as follows: 'Beginning at a stake and mound one mile south of the S. W. corner of survey No. 7, in this block for the N. W. corner of this survey; thence south 1,900 vrs. built a rock mound 3 ft. high long rock marked A. in center of mound, at the N. W. corner of survey No. 529, in Block 8, Galveston, Harrisburg & San Antonio Railway Company, for the S. W. corner of this survey, from whence a clump of oaks brs. S. 48½° E. and a double oak brs. 38½° E. about 220 vrs.; thence E. 1,900 vrs. to a rock mound for the S. E. corner of this survey; thence north 1,900 vrs. to a rock mound composed of 4 large rocks for the N. E. corner of this survey, from which the west end of a ledge of rock in valley, brs. N. 9 E. and an oak 15″ in dia. brs. S. 48¾ E. 800 vrs.; thence west 1,900 vrs. to the place of beginning.' That the defendants are the owners of said survey No. 9.

"(3) That there is a conflict of 826 varas between block No. 8 Galveston, Harrisburg & San Antonio Railway Company and block 347 Texas Central Railway Company grants.

"(4) That section No. 10, block 347, Texas Central Railway Company grant which was surveyed for the public free school fund by virtue of certificate for survey No. 9, contains 640 acres, and that for the purpose of correcting survey No. 9, so as to make it contain 640 acres, the Commissioner of the General Land Office of the state of Texas requested a resurvey of survey No. 529, block 8, Galveston, Harrisburg & San Antonio Railway Company, which corrected survey was made in September, 1907, and said field notes filed for record March 1908, and approved April 1, 1908, by Commissioner of the General Land Office for 361.2 acres. That by said corrected field notes said survey No. 529 is described as: 'Beginning at the N. W. corner of survey No. 528; thence north 1,074 vrs.; thence east 1,900 vrs.; thence west 1,900 vrs. to the place of beginning.' That said corrected field notes are recognized by the Commissioner of the General Land Office as the correct field notes for said survey No. 529. That the distance from the S. W. corner of survey No. 7, in block 347, Texas Central Railway Company to the northwest corner of survey No. 529, block No. 8, Galveston, Harrisburg & San Antonio Railway Company, is 1,074 varas, and that the distance from the northeast corner of said survey No. 529 to the northeast corner of said survey No. 9 is 1,074 vrs.

"(5) That said survey No. 9, in block 347, Texas Central Railway Company, as patented by the state of Texas, to the grantors of the defendants herein on March 1, 1884, as being 1,900 varas square and containing 640 acres.

"(6) It is further agreed by the parties hereto that the only question involved in this suit is a question of boundary."

Upon the findings, the court made the following conclusions of law:

"1. The question in the case is, Was it lawful to so correct the field notes of the original Galveston, Harrisburg & San Antonio Railway Company, survey No. 529, block 8, it being land belonging to the general school fund so as to reduce its quantity, and give it less than was called for by its original field notes, and thereby take from it the land in controversy and give it to an individual survey? There are several statutes which have a bearing upon this question. Article 5385 provides that: 'In all cases where said land, or any portion thereof, has been surveyed into tracts of 640 acres, more or less, and field notes thereof returned and filed in the General Land Office, the same is hereby declared a sufficient designation of said land; and the Commissioner of the General Land Office shall dispose of the same by the survey and block numbers contained in said field notes.' This article taken in connection with the act of February 3, 1883, which, in effect, declares that all locations of public land surveyed for the benefit of the public free schools are valid, whether the certificates by which they were located were "void" or voidable, valid or invalid. And the Act of March 22, 1889, which, in effect declares that all lands embraced within the surveys located by virtue of the certificates of the class by virtue of which the survey in question was located are withdrawn from the mass of the public domain, and the subsequent provisions of the statute declare that all excess of said surveys shall belong to the public free school fund, and, providing how those surveys that belong to individuals may be corrected so as to ascertain this excess, clearly forbids the Commissioners of the General Land Office from making any correction on the said survey which would reduce the area or quantity of the land called for. Especially is this true where it is attempted, as in this case, to reduce survey 529 in order to give a junior individual survey made by virtue of entirely different certificates its full complement of land. Frisbie v. Smith, 13 Tex. Civ. App. 384, 35 S. W. 336.

"(2) In so far as survey No. 9, block 347, Texas Central Railway Company, claimed by the defendants to overlap survey No. 529, block 8, Galveston, Harrisburg & San Antonio Railway Company, belonging to the plaintiff, the same is void under the provisions of section 2, art. 14, of the Constitution of the state which provides 'that all genuine land certificates heretofore or hereafter issued shall be located, surveyed or patented, only upon vacant and unappropriated public domain, and not upon any land titled or equitably owned under color of title from the sovereignty of the state, evidence of the appropriation of which is on the county records or in the General Land Office.'

"(3) Since it is agreed that survey No. 529 claimed by the plaintiff was located on the ground by the surveyor, and was awarded to the plaintiff for 640 acres, and the defendants' survey No. 9 calls to connect on to the northwest corner of plaintiff's survey No. 529, and to conform with its lines as actually placed on the ground, I hold as a matter of law that the call for plaintiff's corners and lines are superior to the calls for course and distance, and therefore that its lines cannot be extended so as to lap over plaintiff's survey 529 as contended for in this case.

"(4) It is my opinion under the agreed facts that plaintiff is entitled to recover the land embraced in the original field notes of survey 529, Galveston, Harrisburg & San Antonio Railway Company, block No. 8, and judgment is accordingly entered."

The judgment recites that the court was of the opinion that plaintiff was entitled to recover the lands sued for, and entered judgment accordingly, describing the land as follows:

"Beginning at the N. W. corner of survey No. 528 said block; thence N. 1,900 vrs. to stake and mound; thence E. 1,900 vrs. to stake and mound; thence S. 1,900 vrs. to stake and mound; thence W. 1,900 vrs. to place of beginning."

From this judgment Main and wife appeal. To show the situation on the ground a plat is hereto attached.

## Opinion.

[1] From the statement made, it is apparent that this is a boundary suit involving the location of the dividing line between section 529 and section 9. The description of the land in the judgment is not even as complete as that given in the petition. It does not identify the grantee or the block in which the same is situate. Possibly, however, in this particular it would be aided by the petition. Conceding this to be true, the issue of boundary remains unsettled. The judgment leaves the location of the dividing line unsettled and the case just where it started. The description by metes and bounds simply follows the original field notes. The location of the disputed line is not established and fixed by reference to any known and readily identified permanent object. Any officer undertaking to execute a writ of possession would have to constitute himself the court and jury and determine the location of the north line of section 529. Under the authorities, it is well settled that in a boundary suit the description contained in this judgment is insufficient to settle the rights of the parties. Reed v. Cavett, 1 Tex. Civ. App. 154, 20 S. W. 837; Jones v. Andrews, 72 Tex. 5, 9 S. W. 170; Edwards v. Smith, 71 Tex. 156, 9 S. W. 77; Merrell v. Kenney, 45 S. W. 423; Bank v. Webb, 60 Tex. Civ. App. 321, 128 S. W. 426; Wilhelm v. Baumann, 63 Tex. Civ. App. 146, 133 S. W. 292; Johnson v. Gary, 157 S. W. 237; Bailey v. Baker, 42 S. W. 124.

[2] This error is not assigned or called to our attention in any way, but it is plainly apparent upon the face of the record. It would be an idle ceremony to affirm a judgment which has failed to settle the controversy. The insufficiency of, and error in, the judgment is fundamental, and necessitates a reversal even though it is not assigned. Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85; Oar v. Davis, 105 Tex. 479, 151 S. W. 794; Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242; City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518; Hahn v. Kellogg, 42 Tex. Civ. App. 636,

94 S. W. 389; Gibson v. Pierce, 146 S. W. 983; Adams v. Faircloth, 97 S. W. 507.

Upon the legal questions arising in the case appellee urges in support of the judgment rendered in his favor, the following propositions:

"(1) The judgment of the trial court is right, and should be affirmed. In so far as survey No. 9, block 347, Texas Central Railway Company, claimed by appellants, overlaps survey No. 529, block 8, Galveston, Harrisburg & San Antonio Railway Company, belonging to appellee, the same is void under the provisions of section 2, art. 14, of the Constitution of the state.

"(2) Moreover, upon the recovery by the state of survey 529, from the Galveston, Harrisburg & San Antonio Railway Company, the entire survey as previously surveyed immediately became donated and set apart to the public free school fund of the state by virtue of the legislative intent, and was never at any time thereafter 'vacant and unappropriated public domain,' subject to appellants' location, survey or patent.

"(3) The judgment of the trial court shall be affirmed for the further reason that survey No. 529 was located on the ground by the surveyor, and was awarded to appellee for 640 acres, and the appellants' survey No. 9 calls to connect with the corner of appellee's survey and to conform with its lines as actually placed on the ground, and such calls for corners and lines actually made on the ground are superior to calls for corners and distances, for which reason the lines of survey 8 cannot be made to extend so as to overlap appellee's survey No. 529, as contended for by appellants."

Section 2, art. 14, of the Constitution contains the following language:

"Provided, that all genuine land certificates heretofore or hereafter issued shall be located, surveyed or patented, only upon vacant and unappropriated public domain, and not upon any land titled or equitably owned under color of title from the sovereignty of the state, evidence of the appropriation of which is on the county records or in the General Land Office; or when the appropriation is evidenced by the occupation of the owner, or of some person holding for him."

By article 5385, Vernon's Sayles' Civil Statutes, it is declared:

"All lands heretofore set apart under the Constitution and laws of Texas, and all of the unappropriated public domain remaining in the state of Texas, of whatever character, and wheresoever located, including any lands hereafter recovered by the state, except that included in lakes, bays and islands along the Gulf of Mexico within tidewater limits, is set apart and granted to the permanent school fund of the state; and all such lands heretofore or hereafter recovered from railway companies, firms, persons, or other corporations by the state, by suit or otherwise, and constituting a part of said school fund as herein provided, shall be disposed of as other school lands, except as otherwise provided by law. In all cases where said lands, or any portion thereof, has been surveyed into tracts of six hundred and forty acres, more or less, and field notes thereof returned to and filed in the general land office, the same is hereby declared a sufficient designation of said land; and the commissioner of the general land office shall dispose of the same by the survey and block numbers contained in said field notes."

The act of February 3, 1883 (Gen. Laws, p. 4), provides:

"Any and all public lands heretofore surveyed by railroads for corporations or any company or any person in this state, for the benefit of the public free schools of this state, by virtue of any certificate, valid or invalid, void or voidable, be, and the same are hereby declared to be lands belonging to the public free schools of this state."

By Act of March 22, 1889, General Laws, page 103, it is declared:

"That all surveys and blocks of surveys heretofore made by virtue of valid alternate script be and the same are, hereby declared to segregate from the mass of the public domain all the land embraced in said surveys or blocks of surveys as evidenced by the corners and lines of same, or by calls for natural or artificial objects, or the calls for the corners and boundaries of other surveys, or by the maps and other records in the General Land Office. That all excess in said surveys or blocks of surveys are hereby donated and declared to belong to the public free school fund of the state; and it shall be the duty of the commissioner of the General Land Office to ascertain, by any and all means practicable the existence and extent of such excesses, and to provide for and direct such surveys, or corrected surveys, as may be necessary for this purpose."

[3, 4] The foregoing constitutional and statutory provisions, as well as the cases of Day L. & C. Co. v. State, 68 Tex. 526, 4 S. W. 865, and Frisbie v. Smith, 13 Tex. Civ. App. 384, 35 S. W. 336, are relied upon by appellee as supporting the first two propositions, but under the facts presented they have no application. Under the agreed facts, it appears that this land was recovered by the state by judgment rendered in the district court of Val Verde county, affirmed by the Supreme Court June 27, 1891. See Railway Company v. State, 81 Tex. 572, 17 S. W. 67. In appellants' brief it is stated that the agreement is erroneous in stating that the land was recovered by the state in the above-mentioned suit, and that in fact it was recovered in another suit in the District Court of Val Verde county, namely, the case of G., H. & S. A. Ry. Co. v. State, reported in 34 S. W. 747, and 36 S. W. 111. It makes no difference in which suit the recovery was had. In either event the recovery was based upon the fact that the certificate by virtue of which section 529 was located was unlawfully issued. Section 529 was located in 1875, but in view of the holding of the court upon the recovery of the land by the state, such location was invalid. So far as the record discloses, the section had not been patented to the Galveston, Harrisburg & San Antonio Railway Company in 1882, when section 9 was located for the Texas Central Railway Company. On that date it was not titled land, nor was it equitably owned by the Galveston, Harrisburg & San Antonio Railway Company, within the meaning of section 2, art. 14, of the Constitution. McLeary v. Dawson, 87 Tex. 524, 29 S. W. 1044; Adams v. Railway Company, 70 Tex. 252, 7 S. W. 729; Kennedy Pasture Co. v. State, 196 S. W. 287; Hanrick v. Dodd, 62 Tex. 75. So, by its location in 1882, the Texas Central Railway Company acquired the equitable title to the disputed strip of

land, and by the issuance of the patent in 1884 the said Texas Central Railway Company acquired both the legal and equitable title. The Texas Central Railway Company was not a party to the suit in which the state recovered section 529, so its title to the land was in no wise affected by the judgment in that case. The disputed strip thus did not pass to the school fund upon the recovery by the state against the Galveston, Harrisburg & San Antonio Railway Company, but belonged to the Texas Central Railway Company, and the statutes and constitutional provision quoted above have no application. The same is true of Day L. & C. Co. v. State and Frisbie v. Smith.

[5] Under this view of the case, the only remaining question relates to the location of the south line of section 9. The trial court concluded as a matter of law that since survey 529 was actually located on the ground, and since the field notes of survey 9 call for a connection with the northwest corner of survey 529, and conforms with the north line thereof as actually placed on the ground, such call was superior to the course and distance call in the location of survey 9, and that the south line of 9 could not be extended so as to overlap 529. Under some circumstances this conclusion of the court would have been proper. An unmarked corner or line is sometimes accorded the dignity of an artificial object, and permitted to control a course and distance call. Maddox Bros. v. Fenner, 79 Tex. 279, 15 S. W. 237; Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317. But such controlling effect is not always given. Gerald v. Freeman, 68 Tex. 201, 4 S. W. 256; Gregg v. Hill, 82 Tex. 405, 17 S. W. 838.

[6] In the instant case the northwest corner of 529 and the north line thereof can only be located by running 1,900 varas north from the northwest corner of survey 528. The southwest corner of 9, which calls for the northwest corner of 529, is marked by natural objects. There is nothing to indicate that the Surveyor Thompson did not actually survey the lines of 9 and locate same upon the ground. In this condition of the record the presumption obtains that he did do so. Cases cited, 3 Michie, Digest, pp. 87, 88. This presumption is strengthened by the particularity with which he fixed the location of the southwest corner by reference to natural objects. As we construe the findings, survey 9 as actually surveyed and located by the surveyor overlapped 529 a distance of 826 varas. The object of all rules formulated by the courts for locating, fixing, and determining boundaries has been to ascertain and discover, if possible, the footsteps of the surveyor, and in this way identify the survey actually made. Since the presumption obtains that survey 9 was actually located on the ground, the southwest corner

thereof marked, and since the findings clearly indicate that, as actually located, it overlapped section 529 by 826 varas, the court therefore erred in giving controlling effect to the unmarked corner and line of 529 over the distance calls in 9.

Upon retrial, if it be established that the south line of 9 as actually surveyed overlapped the north end of 529, then the distance call shall prevail over the call for the northwest corner and north line of 529, and Cartwright is not entitled to recover.

[7] On the other hand, if there was no such overlapping then section 529, having been recovered by the state, became land belonging to the permanent school fund. Article 5385, supra. As such, it was appropriated land (Day L. & C. Co. v. State, supra), and it was not lawful for the land commissioner to correct the field notes thereof so as to reduce its acreage and take from it land belonging to such fund and in effect give it to another survey owned by an individual. Under such circumstances, the correction was without lawful warrant, and, Cartwright having purchased the survey as containing 640 acres, he is entitled to recover.

The corrected field notes of 529 given in paragraph 4 of the findings have a missing call, but it is readily supplied. There is also in said paragraph a manifest error in the stated distance from the southwest corner of survey 7 to the northwest corner of survey 529, but it is of no importance.

Reversed and remanded.

WALTHALL, J., did not sit, being absent on committee of Judges assisting the Supreme Court.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes