**DURDEN et ux. v. ROLAND.  (No. 1142.)**

(Court of Civil Appeals of Texas. Beaumont. Feb. 6, 1925. Rehearing Denied Feb. 26, 1925.)

1. **Boundaries ⬅37(3)—Conclusion as to location of dividing line between lots held sustained by evidence.**

In boundary controversy, evidence *held* sufficient to sustain court's conclusion as to location of dividing line between plaintiff's and defendants' lots.

2. **Adverse possession ⬅38—Conclusion that defendants did not have exclusive possession, sufficient to support plea of limitation, held sustained by evidence.**

In trespass to try title to disputed strip of land, inclosure of which with part of defendant's lot by same fence was not controverted, plaintiff's testimony that he built fence claiming land, and that defendants and their predecessors' use of it was permissive, *held* to sustain conclusion that defendants did not have ex-

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

clusive possession sufficient to support plea of limitation.

**3. Boundaries ⬅37(1) — Conclusion that plaintiff was owner of land sued for and entitled to possession held supported by evidence.**

In trespass to try title to disputed strip of land, court's conclusion that plaintiff was owner of land sued for, and entitled to recover title and possession from defendants, *held* supported by evidence.

**4. Boundaries ⬅32—Land sued for should be described in petition with reference to particular object on ground.**

Land sued for in boundary suit should be described in petition with reference to particular object then existing on ground, so that its location may be established without controversy.

**5. Judgment ⬅527—Construed in light of conclusions of law and fact.**

Judgment must be construed in light of separate conclusions of law and fact filed by court.

**6. Boundaries ⬅43—Judgment in boundary suit held not void for uncertainty in description of land.**

Judgment awarding land to plaintiff by description given in his petition as "beginning at the N. E. corner of said 1-acre tract on the west edge of Collier's Ferry public road, thence west 208.8 feet to the N. W. corner," etc., *held* to sufficiently identify land that officer executing writ of possession could ascertain line fixed without exercising judicial functions; that being certain which can be made certain.

**7. Boundaries ⬅43—Denial of affirmative recovery of land sued for in cross-action held error.**

In boundary suit, court erred in refusing defendants affirmative recovery, in their cross-action, of land deeded to them by plaintiff, which court definitely located by conclusions of fact, and to which defendants established chain of title.

On Rehearing.

**8. Trespass to try title ⬅32—Amended petition held not subject to construction as pleading mere easement in disputed land.**

Amended petition in trespass to try title *held* not insufficient to support judgment for plaintiff, as necessarily subject to construction as pleading that title was in defendants, and that plaintiff had mere easement therein.

**9. Appeal and error ⬅171(3)—Pleadings subject to construction, on theory on which defendants tried case, sufficient to support judgment for plaintiff.**

Defendants having tried boundary suit on theory that pleadings were sufficient to put in issue title to disputed strip of land recovered by plaintiff, and pleadings being subject to such construction, they will not be held insufficient to support judgment.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Trespass to try title by James Roland against J. M. Durden and wife, in which defendants, by cross-action, claimed title within designated boundaries. Judgment for plaintiff, denying relief on cross-action, and defendants appeal. Affirmed in part, and reversed and rendered on cross-action.

O. S. Parker and W. W. Cruse, both of Beaumont, for appellants.

W. R. Blain, of Beaumont, for appellee.

WALKER, J. On the 1st day of January, 1894, Long Manufacturing Company deeded to Nettie Bean, who afterwards married John F. Duggan, one acre of land out of the James Drake survey in the city of Beaumont, Jefferson county, Tex. Afterwards, she had a surveyor named Daniells to take off of the south side of this acre a strip 14 feet wide, and to divide the balance into three equal portions, as follows: Across the north side of the acre a strip fronting on the east side of the acre 64.9 feet and extending across the full width of the acre 208.8 feet. The remaining portion was divided into two equal parts by a line running from the south boundary line of the acre to the south boundary line of the strip just described. Each of these two lots, therefore, had a frontage on the south side of the acre about 104.2 feet, and extended north to the first tract, as described above, about 129.6 feet. The 14-foot strip across the south side was left by the owner for street purposes. The acre was bounded on the south by what is now called Ash street, and on the east by what was then called Collier's Ferry road, but is now Pine street. In establishing a corner for the lot in the southeast corner of the acre, Mr. Daniells drove down an iron stake, which is now where he placed it at that time, and is preserved in a cement sidewalk across the property. On January 14, 1899, Nettie Duggan, joined by her husband, conveyed the first described lot to W. M. Collier by the following field notes:

"Beginning at the N. E. corner of said 1-acre tract on the west edge of the Collier's Ferry public road; thence west 208.8 feet to the N. W. corner of said 1-acre tract; thence south along the west boundary line of said one acre 64.9 feet stake for corner; thence east 208.8 feet stake for corner; thence north along the east boundary line of said one acre 64.9 feet to the beginning."

On January 21, 1899, Collier conveyed the same lot, under the same description, to James Roland, the appellee in this case, who has owned and occupied it continuously from the time he acquired it to the date of this trial.

On the 29th day of May, 1902, Nettie Duggan, joined by her husband, conveyed to Beulah Collier the southeast lot into which

the acre had been divided under the following description:

"Beginning at an iron stake, the same being the southeast corner of the 1-acre tract purchased from Long & Co. by Nettie Bean,'said stake being on the west side of the Collier's Ferry public road; thence north 143.6 feet a stake for corner, said stake being the southeast corner of a tract purchased by Jim Roland from Will Collier; thence west 104.2 feet a stake for corner, the same being Idenia Wilkerson northeast corner, and the northwest corner of this survey; thence south, on Wilkerson's east line, 143.6 feet to center of a street; thence east 104.2 feet to the place of beginning —containing one-third of an acre of land."

On the 26th day of November, 1902, Beulah Collier conveyed it by the same description to James Roland and one C. E. Foley, and they afterwards, by the same description, conveyed it to C. E. Foley's wife, Fannie Foley. She died owning this lot, and it descended to her children, who have conveyed it to appellants, the wife of J. M. Durden being one of her daughters. Roland and Foley were brothers-in-law, and lived for years on these adjoining lots. The south side of the James Roland lot and the north end of the Fannie Foley lot were inclosed together, and used indiscriminately by James Roland and Fannie Foley and those claiming under her.

About 1922, James Roland sued appellants, J. M. Durden and his wife, in trespass to try title for the lot deeded to him by W. M. Collier on the north end of this acre, describing in his petition the land as it was described to him in his · deed from Collier. The defendants answered by the usual defenses, and specially by disclaiming all right and title to the land claimed by James Roland in his petition "except and unless any portion thereof extends over onto, and is in conflict with, defendant's tract of land, out of the S. E. corner of said one-acre tract of land, measuring 143.6 feet by 104.2 feet, which 104.2 feet measures along Ash avenue and 143.6 feet along Pine street, and out of the S. E. corner of the same 1-acre tract of land which plaintiff's claim is to 64.9 feet by 208.8 feet out of the N. E. and west corner of same." Appellants answered further by a cross-action against appellee, claiming affirmatively against him, by the usual allegations in trespass to try title, the same tract of land described in their disclaimer. Though in form a trespass to try title suit, in effect, the purpose of this suit was to locate the dividing line between the James Roland lot on the north, and appellants' lot in the southeast corner of the Nettie Duggan acre.

On a trial to the court without a jury, judgment was entered in favor of appellee for the land described in his petition, and it was decreed to him by that description. Appellants were denied any relief on their cross-action, and were adjudged to pay all costs.

On motion of appellants, the trial court filed separate conclusions of law and fact, giving in detail the statement we have made as to the acquisition of the acre of land by Nettie Bean from Long Manufacturing Company, her sale to the Colliers, and the mesne transfers to the parties to this suit, making the following additional conclusions:

"It was admitted between the parties that the said Nettie Duggan, by virtue of the deed above mentioned from Long & Company, acquired title to the acre of land described therein.

"I find that the southeast corner of the tract of land conveyed by Nettie Duggan to Beulah Collier, and by. Beulah Collier to James Roland and C. E. Foley, and by them to Fannie Foley, was on the south line of the James Drake survey, and that the south line thereof was the south line of the James Drake survey.

"I find that there is no conflict between the tract of land purchased by James Roland from W. M. Collier, and that purchased by Foley and Roland from Beulah Collier.

"I find that the property of the plaintiff and the defendants. has been inclosed under the same fence, and that there has been no such exclusive possession or occupancy of any portion of plaintiff's land by the defendants as, would support the plea of limitation.

"I conclude, as a matter of law, that James Roland is the owner of the tract of land sued for, and described in his petition, which is identical with the tract of land described in the deed from Nettie Duggan to W. M. Collier, and that, as such owner, he is entitled to recover the title and possession thereof from the defendants."

[1] Appellants have assigned error against the following conclusions of fact made by the trial court:

"(1) I find that the southeast corner of the tract of land conveyed by Nettie Duggan to Beulah Collier, and by Beulah Collier to James Roland and C. E. Foley, and by them to Fannie Foley, was on the south line of the James Drake survey, and that the south line thereof was the south line of the James Drake survey."

The deed from Long Manufacturing Company to Nettie Bean does not appear to have been offered in evidence, but the description of the land conveyed was in evidence, and it appeared without dispute that the acre was 208.8 feet square. Mr. Daniells, the surveyor who made the subdivisions for Nettie Duggan, testified as follows, quoting from appellants' brief:

"That in dividing up the acre tract for Nettie Duggan in 1898 he located the southeast corner of her acre as being on the south line of the Drake, but that in making the divisions of the acre for her he began 14 feet north, leaving a 14-foot strip south of the subdivisions. He said, 'I mean the original corner of the acre, if I had begun there, would have been 14 feet south of where I did begin.' Where he began he put an iron stake and identified it as being the one there now." · ·

[2] This evidence was unimpeached, and there was no suggestion of any controverting

evidence, and, without further citations from the record, is sufficient to sustain the conclusion excepted to.

"(2) I find that the property of the plaintiff and the defendants has been inclosed under the same fence, and that there has been no such exclusive possession or occupancy of any portion of plaintiff's land by the defendant as would support the plea of limitation."

[3] As we understand the record, it is shown without controversy that the north end of appellants' lot and the south end of appellee's lot were inclosed under the same fence. This included the land in controversy. Appellee testified that he built the fence, claiming the land,—and that the use of it by appellants and those under whom they hold was permissive. While appellants controverted appellee's evidence on this issue, there were sufficient facts to sustain the conclusion that appellants did not have exclusive possession sufficient to support their plea of limitation.

"(3) I conclude as a matter of law that James Roland is the owner of the tract of land sued for, and described in his petition, which is identical with the tract of land described in the deed from Nettie Duggan to W. M. Collier, and that as such owner, he is entitled to recover the title and possession thereof from the defendants."

While this is made by the court as a conclusion of law, appellants attack it more as a conclusion of fact, and reviewing all the facts in evidence, advance the proposition that the court's finding that the southeast corner of the land deeded by James Roland and C. E. Foley to Fannie Foley was on the south boundary line of the acre was without support. Under this assignment, we make the following additional findings:

(1) The 14-foot strip, as above described, was, in fact, dedicated for street purposes, and appellants' lot has had a continuous frontage on Ash street across this 14 feet.

(2) The iron stake, described by Daniells in the southeast corner of the southeast lot now claimed by appellants, has been recognized all these years as the southeast corner to that lot, both by the present owners and by all the parties who have claimed it under Nettie Duggan.

(3) If this stake is taken as the beginning corner of appellants' lot, and their east boundary line is extended north from 'this stake 143.6 feet, 14 feet off the south side of appellee's lot will be included in appellants' description; and in the description given by Jim Roland and C. E. Foley to Fannie Foley, placing the dividing line between appellants and appellee within six inches of appellee's 2-story home, which he has occupied for many years. If the beginning corner of appellants' lot is located at the southeast corner of the acre, as called for in the descriptions under which it has been conveyed, then their northeast corner and their north boundary line will be in the south boundary line of appellee's lot, as claimed by him, and as deeded to him. If the southeast corner of appellant's lot is so located, appellants and appellee will then be given the exact amount of square feet put in these lots by Daniells when he subdivided the acre under the direction of Nettie Duggan.

(4) There is no evidence in the record that an iron stake did not exist at the true southeast corner of the lot when Nettie Duggan, Beulah Collier, and Roland and Foley respectively conveyed it. Other than the circumstances we have given, there is no evidence that these parties were calling for the Daniells iron stake at the time they made their conveyances.

Now, is there evidence in the record raising the issue that Nettie Duggan, Beulah Collier, and Jim Roland and C. E. Foley, in conveying this land, intended to call for the southeast corner of the acre on the south boundary line of the Drake survey, rather than the stake driven by Daniells 14 feet north of that corner? We think so. By adopting the trial court's conclusions of fact, Jim Roland and C. E. Foley would be conveying to Fannie Foley only the land owned by them jointly, and no part of appellee's separate property, it being understood in this connection that Foley had no interest in the land acquired by appellee from William Collier.

Again, this construction obviates a conflict between Nettie Duggan's deed to William Collier, under whom appellee holds, and her deed to Beulah Collier, under whom appellants hold. Again, there is no evidence that an iron stake did not, in fact, exist there at the southeast corner of the acre at the time it was conveyed from Nettie Duggan down to Fannie Foley. Again, there is evidence that appellee claimed to the full extent of the boundaries in his deed from William Collier, and that this claim was acquiesced in by appellants and those under whom they hold during all the time they lived there as neighbors. It is our judgment that the trial court's conclusion is abundantly supported, and we might say that it does not appear to us how he could have found otherwise.

[4] Appellants say that the judgment in this case is void because, as it is a boundary suit, and as the land is awarded to appellee under the same description given in his petition, nothing has been settled, and the parties are now just where they started. The point appellants make is that the land awarded to appellee should have been described with reference to some particular object then existing on the ground, so that its location would be established without controversy.

[5, 6] This legal proposition has support in our decisions, and abstractly stated, is, without question, the law of this state. Jones v.

Andrews, 72·Tex. 17, 9 S. W. 170; Wilhelm v. Bauman, 63 Tex. Civ. App. 146, 133 S. W. 292; Main v. Cartwright (Tex. Civ. App.) 200 S. W. 849; Craig v. Mings (Tex. Civ. App.) 144 S. W. 316; Reed v. Cavett, 1 Tex. Civ. App. 154, 20 S. W. 838, and the many authorities reviewed and cited therein. But these authorities are not in point on the facts of this case. Standing alone, the court's judgment might be subject to the criticism urged, but the judgment must be construed in the light of the separate conclusions of law and fact filed by the court. Bowles v. Belt (Tex. Civ. App.) 159 S. W. 885; Hudson v. Childree (Tex. Civ. App.) 156 S. W. 1154; Watkins v. Jumker, 4 Tex. Civ. App. 629, 23 S. W. 802. When so construed, there is no ambiguity, no uncertainty as to the location of the land awarded appellee, but the description fully meets the rule announced in Wilhelm v. Bauman, supra, and so identifies the land that an officer charged with the duty of executing a writ of possession could go upon the ground and "without exercising judicial functions, ascertain the locality of the line fixed by the judgment." This is true because the court fixed the southeast corner of appellants' lot on the James Drake south boundary line, which, in fact, is in the middle of Ash street, 14 feet south of the iron stake driven by Daniells. Then, by extending this line north 143.6 feet, the officer would reach the south boundary line of appellee's tract. Having reached the south boundary line, there would be no difficulty in locating his lot as described in the judgment.

Again, since the acre was 208.8 feet square, and since its southeast corner was 14 feet south of the Daniells' iron stake, an officer would have no trouble in locating the beginning corner of appellee's land, as called for in his description, it being 208.8 feet north of the southeast corner. In so locating it, the officer executing a writ of possession would not be exercising "judicial functions." Since that is certain which can be made certain, the judgment is not void because of uncertainty in description.

[7] Appellants had an affirmative action against appellee for the recovery of the land deeded to them by Jim Roland. The court, by its conclusions of fact, definitely located this land. Appellants established a chain of title to it, which seems to have been conceded by appellee, so the court erred in refusing to give them an affirmative recovery against appellee for the land described in their cross-action.

It follows that the judgment of the trial court in favor of appellee, for the land put in issue by his petition and by appellants' disclaimer, must be affirmed. But in so far as appellants were denied a recovery on their cross-action against appellee, the judgment of the trial court must be reversed and is here rendered in their favor, their beginning corner to be the southeast corner of the acre, located on the south boundary line of the James Drake survey, 14 feet south of the Daniells iron stake as it now exists in the cement sidewalk. With this as the beginning corner, appellants are hereby decreed the land as described by them in their cross-action. The costs of this appeal are taxed against appellee.

Affirmed in part and in part reversed and rendered.

### On Rehearing.

[8] On this rehearing appellants insist most strenuously that a judgment for appellee for the land in controversy has no support in his pleadings; that is, they contend that appellee pleaded specially that the title to the land·in controversy was in appellants, but that he had acquired an easement against it for use in connection with other property owned by him across appellants' lot in Pine street, and that his pleading was subject to no other construction. We rather think that his original petition was subject to the construction now urged by appellants, but we think the amended petition, upon which the case was tried, is not necessarily subject to that construction. It appears from appellee's allegations:

(1) That he pleaded in trespass to try title, including in the description of the property involved the land now in controversy and awarded to him under our judgment.

(2) That while in his original petition he pleaded that he had an easement across 32 feet on the north end of appellants' lot, in his amended petition he described this part of the land in controversy as being only 18 feet wide, thus not involving in that description the 14 feet awarded him, and therefore not confessing title to that 14 feet in appellants.

[9] (3) While appellee did plead specially in his amended, as well as in his original, petition that appellants owned 144 feet on Pine street, fronting about 104 feet on Ash street, appellants' property being on the corner of Ash where it crosses Pine, yet, he refers generally to the description in the prior conveyances as given in our original opinion, and we do not think that it necessarily follows that by this pleading he intended to confess title in them to 144 feet on Pine north from the corner where Pine crosses Ash; that is, 144 feet north of the iron stake in the sidewalk, as described in our original opinion. Such an admission on ·his part, after he abandoned his claim of easement, would have left nothing in dispute between the parties, and it would have been the court's duty to enter judgment on the pleadings in favor of the appellee. But neither the parties nor the .court gave the pleadings that construction. On the admission of appellee, the 18-foot strip across the north end of appellants' lot was eliminated, but the

court heard evidence from both parties as to the ownership of the 14 feet immediately south of appellee's 2-story house, and being the 14 feet recovered by him. Since appellants tried this case on the theory that the pleadings were sufficient to put in issue the title to the 14 feet, and since the pleadings are subject to that construction, it would now be a manifest injustice for us to hold that the pleadings are insufficient to support the trial court's judgment.

The other points raised in the motion for rehearing were disposed of to our entire satisfaction in the original opinion. Therefore the motion for rehearing is in all things overruled.