

# The Attorney General of Texas

August 28, 1985

**JIM MATTOX**
**Attorney General**

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Garry Mauro
Commissioner
General Land Office
Stephen F. Austin Building
Austin, Texas   78701

Opinion No. JM-347

Re: Whether the school land board is authorized to sell certain tracts of land acquired through tax foreclosure sales

Dear Commissioner Mauro:

You inquire whether the School Land Board has authority to sell two tracts of land acquired by the state through tax foreclosure sales. You advise us that, pursuant to court-ordered tax foreclosure sales following the foreclosure of tax liens, title to certain lots in Bracken in Comal County were bid off to the state in 1922 and title to certain lots in Happy in Swisher County were bid off to the state in 1951. For lack of bidders, the land was sold to the state as a taxing unit which was a party to the foreclosure suit, and apparently there has not been a resale by the purchasing taxing unit.

You first ask whether section 15.01(a)(2) of the Education Code places these tax foreclosure tracts in the permanent school fund. It is our opinion that the land in question does not belong to the permanent school fund and that the School Land Board does not have authority to sell the land.

Section 15.01(a)(2) of the Education Code provides that

> (a) The permanent school fund, which shall constitute a perpetual endowment for the public free schools of this state, shall consist of:
>
> . . . .
>
> (2) all the unappropriated public domain remaining in Texas, including all land recovered by the state by suit or otherwise except pine forest land as defined in Section 12, Article 2613, Revised Civil Statutes of Texas, 1925, as amended. . . .

The issue is whether the land in question is "land recovered by the state by suit or otherwise" within the meaning of section 15.01(a)(2).

Originally, article 5416, Texas Revised Civil Statutes, 1925, which contained the same provisions as article 5385, Revised Civil Statutes of 1911, and the Settlement Act of 1900, provided that

> all of the unappropriated public domain remaining in the State, of whatever character and wheresoever located, including any lands recovered by the State, except that included in lakes, bays, and islands along the Gulf of Mexico within tidewater limits and except pine forest lands as defined in Article 2613 . . . is set apart and granted to the permanent school fund of the state.

Article 5420, Texas Revised Civil Statutes of 1925, with the same provisions as article 5468, Revised Civil Statutes of 1911, and the Settlement Act of 1900, and now codified as section 11.077 of the Natural Resources Code, directed that

> when any public lands are held, occupied or claimed by any person, association or corporation, adversely to the State, or to any fund or when lands are forfeited to the State for any cause, the Attorney General shall institute suit therefor. . . .

We believe the language in section 15.01(a)(2), stating that the permanent school fund shall consist, in part, of all the unappropriated public domain including all land recovered by the state by suit or otherwise, is applicable to land recovered by the state for reasons such as fraud or mistake or failure to comply with conditions of the law which authorized the grant or sale of public land or school land. See Barber v. Giles, 208 S.W.2d 553, 554 (Tex. 1948); Main v. Cartwright, 200 S.W. 847, 850 (Tex. Civ. App. - El Paso 1918, no writ). Such land would include that recovered by suits by the state to cancel patents to public land. Recovery of land by suit in trespass to try title on behalf of the state to forfeit a sale for failure to reside on or improve land or to comply with the law as an actual settlor would constitute land recovered by the state. Cf. State v. Hughes, 79 S.W. 608 (Tex. Civ. App. 1904), aff'd, 80 S.W. 524 (Tex. 1904); Duncan v. State, 67 S.W. 903 (Tex. Civ. App. 1902, no writ). Another example would be land forfeited to the state for non-payment of interest on purchase price.

A tax sale and the rights acquired thereunder are governed by the law in force at the time of the sale. See Land v. Banks, 254 S.W. 786, 788 (Tex. 1923); Bente v. Sullivan, 115 S.W. 350 (Tex. Civ. App.

1908, writ ref'd).  The tax sale in 1922 was conducted under article 7689, Texas Revised Civil Statutes of 1911, which provided, in pertinent part:

> [I]f there shall be no bidder for such land, that the county attorney shall bid said property off to the state for the amount of all taxes, penalties, interest and costs adjudged against said property; and, in the absence of the county attorney, the sheriff is authorized to bid to the state, when there are no bidders. . . . And, in all such cases where the property is bid off to the state, it shall be the duty of the sheriff to make and execute deeds to the state, using forms to be prescribed and furnished by the comptroller, showing in each case, the amount of taxes, interest, penalty and costs for which sold, and the clerk's fee for recording deeds as hereinafter provided. . . . And, when lands thus sold to the state shall be redeemed, it shall be the duty of the collector of taxes, when any such redemption is made, to make the proper distribution of the moneys received by him in such redemption, paying to each officer the amount of costs found to be due, and to the state and county the taxes, interest and penalties due each respectively.

Substantially the same provisions were carried forward in article 7328, Texas Revised Civil Statutes of 1925, but with the addition of the following language:

> If any of the land thus sold to the State is not redeemed within the time prescribed by this law, the sheriff shall sell the same at public outcry to the highest bidder. . . . The sheriff shall send the amount received from such sale to the State Treasurer after deducting the amount of the county taxes, interest and penalty of the county tax which he shall pay to the county treasurer. The sheriff, in behalf of the State, shall execute a deed conveying title to said property when sold and paid for.

Prior to the enactment of article 7345b, Texas Revised Civil Statutes, in 1937, each taxing unit could separately enforce its tax lien against the same property with different suits, judgments, executions, sales and conveyances and with the resulting extra cost and confusion of titles and rights.  See City of El Paso v. Forti, 181 S.W.2d 579 (Tex. 1944); Pearsall Independent School District v. Widner, 136

S.W.2d 647 (Tex. Civ. App. - San Antonio 1940, no writ).   To prevent multiplicity of suits and include all taxing units in a suit brought by any one of them, article 7345b provided, in pertinent part, the following:

> Sec. 2.  In any suit hereafter brought by or in behalf of any taxing unit as above defined, for delinquent ad valorem taxes levied against property by any such taxing unit, the plaintiff may implead as parties defendant any or all other taxing units having delinquent ad valorem tax claims against such property, or any part thereof, and it shall be the duty of each defendant taxing unit, upon being served with citation as provided by law to appear in said cause and file its claim for delinquent ad valorem taxes against such property, or any part thereof.
>
>     . . . .
>
> Sec. 9.  If the property be sold to any taxing unit which is a party to the judgment under decree of Court in said suit, the title to said property shall be bid in and held by the taxing unit purchasing same for the use and benefit of itself and all other taxing units which are parties to the suit and which have been adjudged in said suit to have tax liens against such property, pro rata and in proportion to the amount of the tax liens in favor of said respective taxing units as established by the judgment in said suit, and costs and expenses shall not be payable until sale by such taxing unit so purchasing same . . .  When such property is so sold at public or private sale, the proceeds thereof shall be received by or paid over to the taxing unit which purchased said property at the tax foreclosure sale, for the account of itself and all other taxing units adjudged to have a tax lien against such property, and all taxing units so receiving said proceeds shall first pay out of the same all costs and expenses of Court and of sale, and distribute the remainder among all taxing units for which purchasing taxing unit purchased and held said property, pro rata and in proportion to the amounts of their tax liens against said property as established in said judgment.
>
>     . . . .

> If the State of Texas is the taxing unit which purchased said property at the tax foreclosure sale, the Commissioners Court of the county in which the property is located shall have authority to act for the State of Texas in making private sales and conveyances of said property, as herein provided, or in requesting the Sheriff, or in appointing a Commissioner, to make public sale thereof, and in receiving and distributing the proceeds of such sales; and all sales and conveyances made in behalf of the State of Texas by the Commissioners Court, or made by the Sheriff or any Commissioner appointed by the Commissioners Court, under the provisions hereof, shall operate to transfer to the purchaser at such sale all right, title and interest acquired or held by the State of Texas as purchaser at the tax foreclosure sale. . . .

At the time of the 1951 tax foreclosure sale, the provisions of article 7345b were cumulative of and in addition to article 7328 except that, as to a conflict, the provisions of article 7345b prevailed. Tex. Rev. Civ. Stat. art. 7345b, §13 (1937). See Little v. Dennis, 187 S.W.2d 76 (Tex. 1945); Willacy County Water Control & Improvement District v. Lewis, 119 S.W.2d 159 (Tex. Civ. App. - San Antonio 1938, no writ). In 1979, both article 7328 and article 7345b were repealed and incorporated into the Property Tax Code. See Tax Code, ch. 34, subchapter A.

We believe that the language of the sheriffs' deeds conveying title to the state in 1922 and 1951 conforms to the language of the statutes authorizing such deeds on those dates. Article 7689, Texas Revised Civil Statutes of 1911, directed the sheriff to make and execute deeds to the state, using forms prescribed and furnished by the comptroller and, as directed, the deed shows the amount of state and county taxes, interest, penalty, and costs. We do not know the form prescribed by the comptroller, but we note that virtually the same language of conveyance appears in the tax deed litigated in Land v. Banks, supra, in 1923. As directed by section 9 of article 7345b, the deed in 1951 expressly provides that the title to the property in Swisher County was bid in and held by the state in trust for the use and benefit of itself and all other taxing units which were parties to the suit.

No payment of money occurs at the time of the first foreclosure sale to a taxing unit but, instead, occurs when the property is redeemed or resold by the purchasing taxing unit. The purchasing taxing unit holds title to the property for the benefit of itself and the other units until it is resold and the proceeds from that sale are

apportioned.  See Tax Code, §34.01(c); Attorney General Opinion O-974 (1939).

We conclude that land acquired at the tax foreclosure sales at which the state was the purchasing taxing unit is not "land recovered by the state by suit or otherwise" within the meaning of section 15.01(a)(2) of the Education Code.  It is not a recovery of land by the state but a tax sale to the state for the benefit of itself and as trustee for the other taxing units, with the ultimate purpose of selling it and thereby procuring the money to pay the taxes due each taxing unit.  See Childress County v. Schultz, 199 S.W.2d 860, 862 (Tex. Civ. App. - Amarillo 1946, no writ).  Cf. Attorney General Opinion V-782 (1949).  At the expiration of the redemption period, title vests in the purchasing taxing unit, which then holds the title for resale and for the purpose of collecting the delinquent taxes. See State v. City of San Antonio, 209 S.W.2d 756, 758 (Tex. 1948); Lubbock Independent School District v. Owens, 217 S.W.2d 186, 188 (Tex. Civ. App. - Amarillo 1948, writ ref'd).

There are or have been statutes that specified certain conditions under which land would become part of the permanent school fund or part of the state forest.  Article 5384, Texas Revised Civil Statutes of 1911, first enacted in 1879, applied only in unorganized counties. The legislature provided that when lands were sold in unorganized counties and bid in by the comptroller for the state for delinquent taxes and not redeemed by the owner, the land thus sold and unredeemed became vacant and reverted to the public free school fund, to be sold and disposed of as other lands belonging to the public free school fund.  Section 71.202 of the Property Code also expressly appropriates and sets apart to the permanent school fund all real property that escheats to the state of Texas under Title 6 of that code.  See Attorney General Opinion MW-18 (1979).  This office also determined in Attorney General Opinion MW-18 that land devised to the state of Texas under terms of an individual's will and not designated to a particular use becomes a part of the permanent school fund.

In 1935, prior to the enactment in 1937 of article 7345b, Texas Revised Civil Statutes of 1925, which consolidated the foreclosure of tax liens of the different taxing units in one suit and one foreclosure sale, the legislature added section 12 to article 2613, Texas Revised Civil Statutes of 1925, and amended article 5416, Texas Revised Civil Statutes of 1925.  Chapter 312, Forty-fourth Legislature, 1935, now codified in sections 15.01(a)(2) and 88.111 of the Education Code, provides that, when pine forest land is sold to the state for the payment of taxes, interest, penalty, and costs adjudged against the land as provided by article 7328 and not redeemed or resold as provided by article 7328, the land shall be withdrawn from the market and shall be held, protected, and administered by the Board of the Texas A&M University System as state forest.  Thus, the

legislature expressly specified its intention that the state retain pine forest land bought in by the state at a tax foreclosure sale under article 7328 when the land was not redeemed or resold and stated its intention that such pine forest land is not retained as part of the permanent school fund. It is our opinion that the status of all other land purchased at a tax foreclosure sale by a taxing unit is not altered by the fact that the legislature expressly directed that pine forest land acquired by the state at a tax foreclosure sale conducted under article 7328 be retained and administered as state forest and that it not be retained as part of the permanent school fund. See Attorney General Opinion O-2871 (1941).

We find nothing in the statutes or cases which indicates that the legislature intended that title to real property acquired by the state as a taxing unit at a tax foreclosure sale in Comal County in 1922 or in Swisher County in 1951 would become part of the permanent school fund. It is our opinion that the statutes authorizing acquisitions of title by the state at tax foreclosure sales provide otherwise.

You also inquire who has authority to sell the lands in question if the land is not in the permanent school fund where it would be subject to sale by the School Land Board and how the proceeds would be allocated.

Since the Comal and Swisher County tracts have not been resold by the state since the state became the purchasing taxing unit at the foreclosure sales, title remains in the state. The power and duty to provide for the sale and conveyance of such title is in the legislature.

The authority of a purchasing taxing unit to resell property acquired at a tax foreclosure sale appears in section 34.05 of the Tax Code. Prior to 1983, section 34.05(a) provided that

> (a) If property is sold to a taxing unit that is a party to the judgment, the taxing unit may sell the property at any time, subject to any right of redemption existing at the time of the sale. If property is sold to the state, the commissioners court of the county in which the property is located may act for the state. (Emphasis added).

Unless the property is sold by the sheriff at a public sale, it may not be sold for less than the market value specified in the judgment of foreclosure or the total amount of the judgments against the property, whichever is less, without the consent of each taxing unit entitled to proceeds of the sale. Tax Code §34.05(b). Section 34.05(c) provides, in part, that

(c) The taxing unit purchasing the property by resolution of its governing body may request the sheriff to sell the property at a public sale. If the purchasing taxing unit has not sold the property within six months after the date on which the owner's right of redemption terminates, any taxing unit that is entitled to receive proceeds of the sale by resolution of its governing body may request the sheriff in writing to sell the property at a public sale.

In 1982, article 8, section 1-e of the Texas Constitution was amended to provide that no state ad valorem taxes shall be levied on any property in this state, and, in 1983, the legislature amended the Property Tax Code to conform it to that and other changes in the constitution concerning property taxation. See Bill Analysis prepared for House Ways and Means Committee, filed in Bill File on H.B. No. 1203, Legislative Reference Library (1983). In so doing, chapter 851, Sixty-eighth Legislature, 1983, deleted the last sentence in section 34.05(a) which, prior to that time, had authorized the commissioners court of the county in which the property is located to act for the state in the sale of property when title to the property was acquired by the state at a tax foreclosure sale. Chapter 851 also repealed all of section 34.08, which had specified that the state was a taxing unit for purposes of chapter 34 of the Property Tax Code.

As a result of the 1983 amendments to the Property Tax Code, the code no longer authorizes the commissioners court of the county in which the property is located to act for the state in making a private sale of the property or in a request to the sheriff to sell the property at public sale. With the repeal of section 34.08, it is questionable whether the state is a taxing unit for purposes of the chapter of the code which authorizes the sale of such property.

We are unable to find any statute authorizing any official or governmental entity to make a sale for the state where the state was the purchasing taxing unit. Where the purchasing taxing unit has not sold the property within six months after the owner's right of redemption expires, section 34.05(c) still authorizes any taxing unit that is entitled to receive proceeds of the sale to request the sheriff to sell the property at a public sale. However, we find no statute that authorizes any person to make a distribution of the proceeds of such a public sale when title is in the state.

Section 34.06 of the Property Tax Code is the legislature's grant of authority for the distribution of the proceeds of a resale. It provides

(a) The proceeds of a resale of property purchased by a taxing unit at a tax foreclosure sale shall be paid to the purchasing taxing unit.

(b) The purchasing taxing unit shall pay all costs and expenses cf court and sale and shall distribute the remainder of the proceeds as provided by section 34.02 of this code for distribution of proceeds after payment of costs.

If the state no longer is a taxing unit for purposes of a tax sale and no person or entity is authorized to act for the state at a resale of property sold to the state at foreclosure sale, the proceeds of a resale cannot be paid to or distributed by the purchasing taxing unit as directed by section 34.06.

We conclude that the legislature has made no general provision for the resale and conveyance of its title to tracts of land acquired by the state through tax foreclosure sales. However, Chapter 953, Acts of the 69th Legislature, 1985, which becomes effective August 26, 1985, authorizes the commissioner of the General Land Office to convey all of the interest of the state in Lots 8 and 9, Block 9, City of Bracken, Comal County.

## S U M M A R Y

The real property acquired by the state as the purchasing taxing unit at a tax foreclosure sale does not belong to the permanent school fund and the School Land Board does not have authority to sell such land. Only the purchasing taxing unit is authorized by statute to resell land which it acquired at a tax foreclosure sale and to receive and distribute the proceeds of a resale of such property. Current statutes do not authorize any official or governmental entity to act for the state in a resale and distribution of proceeds when the state was the purchasing taxing unit at a prior tax foreclosure sale. However, effective August 26, 1985, the legislature has authorized conveyance of the specific property in Comal County.

Very truly yours

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton
Sarah Woelk